**UNITED STATES of America,**
**Appellee,**

v.

**Joseph NADLER, Appellant.**
**No. 35, Docket 29402.**

United States Court of Appeals
Second Circuit.

Argued Sept. 22, 1965.

Decided Dec. 8, 1965.

Henry K. Chapman, New York City (Irving Rader, New York City, of counsel, on the brief), for appellant.

Neil Peck, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern

District of New York, and Robert J. McGuire, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

Wherever, as here, the appeal is based on the charge that the appellant could not have had his guilt or innocence fairly determined by the jury because of the manner in which the case was developed before the jury, the entire record must be carefully searched as to procedure and substance. After such a review in the present case, we find no reversible error and, hence, affirm the conviction.

## I.

*Consolidation*

Appellant, the sole defendant in two indictments, first asserts as reversible error the consolidation and the trial before a single jury of the issues therein presented.

*The O'Connor Indictment*

Appellant was indicted (64 Cr. 241) in Count One with having received and in Count Two with having pledged securities transported in interstate commerce "knowing the same to have been stolen." 18 U.S.C.A. § 2315. The securities which were the subject of this indictment had been stolen from a couple named O'Connor.

*The Grandin Indictment*

Appellant was also indicted (64 Cr. 352) in three counts with having received (Counts One and Three) and having pledged (Count Two) other securities with knowledge that they had been stolen. The securities which were the subject of this second indictment had been stolen from one Philip Grandin.

By court order, the indictments were consolidated for trial over the objections of the appellant. Rule 13 (F.R.Cr.Proc.) permits two or more indictments to be tried together "if the offenses * * * could have been joined in a single indictment * * *." Rule 8(a) authorizes joinder "if the offenses charged, * * * are of the same or similar character * * *." The offenses charged, namely, the receiving and pledging of stolen securities, were obviously of a similar character, so that the order of consolidation came within the letter of the rule. Although no motion (such as for severance) was made during the trial based upon a claim of prejudice as the proof relating to both indictments was introduced, appellant now claims that the jury's verdict of acquittal of the charges in the O'Connor indictment and conviction in the Grandin indictment demonstrates prejudicial confusion. The Government naturally uses the same state of facts to argue careful discrimination and complete lack of confusion in the collective jury mind.

Many a scholar interested in the workings of the jury system has endeavored to speculate as to the nature of the deliberations which take place behind the closed doors of the jury room. Why, for example, asks appellant, did the jury acquit him on the O'Connor phase of the case as to which there was strong and direct proof of his knowledge that he was trafficking in stolen securities and convict him on the Grandin phase? The appellate tribunal can answer only: we don't know. Were it our function (which it is not) to give our own jury verdict, we might agree with appellant that it would have been more logical for him to have been convicted on the O'Connor indictment and acquitted as to the Grandin. Our review on this consolidation point, however, is confined to the single question: was there any proof introduced on the O'Connor indictment, on which he was acquitted, which was sufficiently prejudicial so as to have deprived appellant of a fair trial as to the other, on which he was convicted?

Appellant attempts to demonstrate prejudice from the consolidation by showing that evidence offered in proof of one indictment was largely unrelated to evidence offered in proof of the other. It is true that little of the testimony apart from Nadler's own description of his borrowing of securities to use as col-

lateral related to both indictments. The thefts were from different homes; the pledges were made through different bank officers. On the O'Connor indictment, two witnesses testified that Nadler had expressed an interest in stolen securities and one of the two described a meeting at which Nadler paid cash for securities to one Joselit who had held himself out as possessing stolen securities. On the Grandin indictment, two FBI agents testified to Nadler's inconsistent explanation of his possession of the Grandin stock. ·

However, the trial was short. The case differs from Castellini v. United States, 64 F.2d 636 (6th Cir. 1933), in which the trial lasted several weeks and the Government introduced hundreds of documents, only a few of which were relevant to both counts, and many of which were highly technical. There was not a mass of confusing exhibits, and the court's charge clearly separated the two groups of securities. The only possible prejudice Nadler can demonstrate from the fact that evidence relevant to one indictment was not relevant to the other is that, as Judge Clark wrote in United States v. Smith, 112 F.2d 83, 85 (2d Cir. 1940), "juries are apt to regard with a jaundiced eye a person charged with two crimes than a person charged with one." See also United States v. Lotsch, 102 F.2d 35, 36 (2d Cir., L. Hand, J.), cert. denied, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939). The possibility of this kind of prejudice must have been apparent to the draftsmen of the Federal Rules of Criminal Procedure when they authorized the consolidation of indictments charging offenses of the same or similar character. We believe, as the draftsmen of the Rules must also have believed, that the governmental interest in the efficient administration of criminal justice outweighs the possibility of prejudice of this sort, present whenever indictments are consolidated or a single indictment charges more than a single offense.

## II.

*The Charge*

Quite apart from the question of the propriety of consolidation, appellant claims that the court's charge to the jury relating to the Grandin securities was so erroneous as to require reversal of the conviction. The court charged:

"As to the Grandin stock, if you find that the defendant was in possession of it shortly after the theft, you may infer from the defendant's recent possession of stolen securities that he knew the securities were stolen."

No other or different charge was requested on behalf of the defendant but after the charge, on the court's invitation to state exceptions, defendant's counsel said, "I except to the charge concerning * * * recent possessions." Upon this foundation, appellant now erects his appellate argument that it is "not from appellant's 'recent possession of stolen securities' that the jury may infer 'that he knew the securities were stolen,'" but that the inference must be drawn from "the *unexplained* recent possession."

Appellant did take the stand and did present his explanation. Therefore, appellant argues syllogistically, the inference, in effect, disappears and guilt can be determined only "from all the facts, circumstances and testimony." Appellant succinctly and clearly states his position that "once appellant testified on his own behalf the jury could not find him guilty merely from inference, contrary to the charge of the court." In other words, no matter how incredible to, and unacceptable by, the jury was appellant's explanation, the possession of recently stolen securities could not be considered as *any* proof and, hence the court was required to withdraw the case from the jury and direct an acquittal.

The world outside the jury room, including appellate courts, will never know (and is not supposed to know) the particular portions of the charge, if any,

on which juries rely in reaching their verdicts. Unless some specific instruction so far departs from the standards set by the law that the appellate court is convinced that the jury might have been misled, such courts usually prefer to examine the charge as a whole—probably on the theory that the impression they receive from the printed words will be that which the jury has received from the spoken words.

 Using this approach, appellant's conclusion that the charge was "a confused and confounded mixture that spelled appellant's guilt" is not justified. The statute (18 U.S.C.A. § 2315) is silent as to any presumption or the effect of any explanation. The Government must always prove beyond a reasonable doubt that the defendant knew "the same to have been stolen." The courts throughout the years have created the realistic fiction that "Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight, unless explained by the circumstances or accounted for in some way consistent with innocence." Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 898, 40 L.Ed 1090 (1896). Nor is our recent decision in United States v. Minieri, 303 F.2d 550 (2 Cir., 1962), cert. denied, 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 81 (1962), to the contrary. In Minieri, we said only that the jury was entitled to draw a permissive inference "[i]n the absence of a reasonable explanation supporting an innocent possession" (p. 554). The portion of the opinion in United States v. Sherman, 171 F.2d 619 (2 Cir. 1947), cert. denied sub nom. Grimaldi v. United States, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed.2d 1738 (1949), relied on by the appellant, merely states the proposition that a jury should not be "directed that it

was required by a rule of law to make this inference" (p. 624). This was not done by the trial court. In his charge, he carefully used the permissible term "inference" rather than the stronger term "presumption."

Reviewing the evidence as to the Grandin securities, the trial court told the jury that the Government claimed that knowledge had been proved by showing recent possession and that appellant had stated that the securities came from his uncle. The court then stated appellant's claim, namely, that he had met a man believed to be Grandin in Mexico City, that he made an agreement with him to borrow for a consideration the securities, a not uncommon practice for him to bolster his brokerage firm's capital account. Thus, the court fairly presented the positions of both Government and appellant, and left to the jury the task of considering "all of the facts relating to the defendant's connection with the transactions so far as they may have been disclosed by the testimony or the reasonable import to be deduced therefrom." Obviously, the jury did not find the possession "accounted for in a straightforward, truthful way" or "the explanation reasonable and satisfactory" (Pearson v. United States, 192 F.2d 681, 689, 6 Cir., 1951).

### III.

*Character Testimony*

 Although the court in United States v. Birnbaum, 337 F.2d 490, 498 (2 Cir., 1964) withdrew its approval of a charge with respect to the supposition that character witnesses might have been misled in the absence of any proof thereof, this charge did not constitute reversible error in Birnbaum; nor does it in this case, in which the charge to the jury was given before the decision in Birnbaum was handed down.

Affirmed.