UNITED STATES of America, Appellee,

v.

James E. DYER, Defendant–Appellant.

No. 427, Docket 90–1383.

United States Court of Appeals,
Second Circuit.

Argued Nov. 2, 1990.

Decided Dec. 21, 1990.

Hugh F. Keefe, New Haven, Conn. (Lynch, Traub, Keefe & Errante, of counsel), for defendant-appellant.

Holly B. Fitzsimmons, Bridgeport, Conn., Asst. U.S. Atty. D. Connecticut (Stanley A. Twardy, Jr., U.S. Atty. D. Connecticut, of counsel), for appellee.

Before NEWMAN, and PRATT, Circuit Judges, GRIESA, District Judge for the Southern District of New York, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

James Dyer appeals from a judgment of the United States District Court for the District of Connecticut, José A. Cabranes, *Judge*, convicting him of filing a false tax return for 1986 in violation of 26 U.S.C. § 7206(1). The same jury acquitted Dyer on six other counts in the indictment, including a RICO and two Hobbs Act violations related to his alleged misconduct as mayor of Danbury, Connecticut, and three counts of filing false tax returns for the years 1983 through 1985.

On appeal, Dyer argues that the trial judge erred in charging the jury that it could infer Dyer's guilty knowledge at the time of filing his original tax return from his having later filed an amended return. We agree and now reverse the conviction and remand for a new trial on the 1986 tax count.

## BACKGROUND

Alice Wenzler purchased a condominium located at 79 Park Avenue, Danbury, Connecticut in 1978. As a condition for granting a mortgage, the mortgagee required that Dyer co-sign the loan. Dyer lived in the condominium with Wenzler and paid half of the monthly payments. At the time of the purchase Dyer was an elected representative to the Connecticut state legislature; the following year he was elected mayor of Danbury.

On March 11, 1982, Wenzler executed a quit claim deed of her interest in the condominium to Theodore H. Goldstein, acting as a trustee for Dyer. Seven months later, Dyer and Wenzler purchased and moved into a different home in Danbury, leaving the condominium vacant.

In August of 1983, Dyer and Wenzler approached their friend Paul Schierloh, the Coordinator of Housing Services for the

City of Danbury, about his interest in purchasing the condominium. They agreed that Schierloh would purchase a one-half interest in the condominium for $35,000, would receive an option to purchase the other half within two years, and would share in its appreciation. To finance the purchase, Schierloh obtained a loan with Dyer as co-signer, and on June 9, 1986, Schierloh purchased the other half of the condominium for $45,000.

In June of 1987, it became public knowledge that there was an on-going federal investigation into alleged political corruption in Danbury. In September, Schierloh, who was then the Associate Director of Housing in Danbury, was interviewed by agents of the Federal Bureau of Investigation and of the Internal Revenue Service who requested that he send them the documents pertaining to the condominium transaction.

When Dyer learned of the interview, he went to his accountant, Joseph Summa, and asked him to review the papers concerning the sale of the condominium and to ascertain whether it had been reported properly on his 1986 tax return. Originally, when Dyer had brought his papers to Summa in 1987 to prepare his 1986 return, neither Dyer nor Wenzler, whom he had recently married, had mentioned their ownership of the condominium or its sale. After reviewing the documentation Dyer brought to him, Summa decided that the gain from the sale of the condominium was fully taxable to the Dyers in 1986. He prepared an amended return, which the Dyers filed on December 24, 1987. This amended return increased the Dyers' taxable income by $10,357 and their tax liability by $3,522.

As a result of the federal investigation, Dyer was indicted in 1989. The indictment included one count of racketeering, under 18 U.S.C. § 1962(c) (1988); two counts of extortion, under 18 U.S.C. § 1951 (1988); and four counts of willfully filing false tax returns for the years 1983 through 1986, under 26 U.S.C. § 7206(1) (1988).

At trial, the jury acquitted Dyer on six of the seven charges in the indictment, but convicted him of filing a false tax return for 1986. He was sentenced to a two year prison term, suspended after six months, and a five year probation period with special conditions.

Dyer raises two issues on appeal. The first is whether the trial court erred in instructing the jury that the filing of an amended tax return for 1986 was an admission that he knew the original return was false when filed. Second, he contends that the trial judge erred by instructing the jury that they could infer Dyer's consciousness of guilt from the falsification of documents, where, he claims, there was no evidence that he either solicited or participated in such falsification. Because we reverse on the first issue, we do not reach the second.

## DISCUSSION

Dyer contends that the trial court erred in instructing the jury, over his objection, that it could consider his amended tax return as an admission that he knew the original return was false when filed. We agree.

We review jury instructions *de novo*, *United States v. Dove*, 916 F.2d 41, 46 (2d Cir.1990), and generally, a jury charge must be viewed as a whole and in the context of the entire trial. *United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 1912–13, 44 L.Ed.2d 489 (1975). If, however, a specific instruction is so far removed from "the standards set by the law that the appellate court is convinced that the jury might have been misled," that portion may be reviewed in isolation. *United States v. Nadler*, 353 F.2d 570, 573 (2d Cir.1965); *see also Heindel v. United States*, 150 F.2d 493, 497 (6th Cir.1945). Here, the jurors were given a lengthy charge, and Dyer objects to the following excerpt which was requested by the government and was objected to by Dyer:

"If you find that the defendant filed an amended 1986 tax return under these conditions, you may consider these circumstances as evidence of the defendant's willfulness, and *the amended return itself as an admission that the*

*defendant knew that capital gain was taxable income when he filed his original 1986 income tax return."* (emphasis added).

We think the emphasized portion quoted above might well have misled the jury on the critical issue of the tax count: Dyer's knowledge.

■■■ Generally, the filing of an amended tax return is not an admission of fraud. *Badaracco v. Commissioner of Internal Revenue,* 464 U.S. 386, 399, 104 S.Ct. 756, 764–65, 78 L.Ed.2d 549 (1984) (addressing a statute of limitations question concerning tax fraud cases). Instead, "[t]he tax laws permit the filing of amended returns to correct errors whether discovered by the taxpayer or the taxing authority. There should be no discouragement to the filing of an amended return, and no hazard in doing so." *Heindel,* 150 F.2d at 497. Without more, an amended return cannot provide an inference of fraud; it can only support an inference of mistake. This instruction, however, informed the jury that the amended return, by itself, was sufficient to support a finding that, by filing it, Dyer admitted knowing that the original return was false when he filed it. Such an instruction is erroneous as a matter of law.

Dyer contended that his reason for initially omitting gain from the sale of the condo was his belief that the gain could be deferred until the sale of his new home. Thus, in this as in most false-filing and tax fraud cases, the defendant's state of mind was a key element. *United States v. Sternstein,* 596 F.2d 528, 530 (2d Cir.1979). "Any person who * * * *[w]illfully* makes and subscribes any return * * * which he does not believe to be true and correct as to every material matter * * * shall be guilty of" fraud. 26 U.S.C. § 7206(1) (1988) (emphasis added). "Willfully" means "an intentional violation of a known legal duty", *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23–24, 50 L.Ed.2d 12 (1976); *United States v. Bishop,* 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973); gross carelessness or negligence is not sufficient. *Bishop,* 412 U.S. at 361, 93 S.Ct. at 2017–18; *United States v. Ruffin,* 575 F.2d

346, 354 (2d Cir.1978); *United States v. Conlin,* 551 F.2d 534, 536 (2d Cir.1977), cert. denied, 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977). At most, filing an amended return indicates that the taxpayer *now* believes he was mistaken at the time he filed the original return; in no way does it shade that minimal assumption toward proof of the requisite fraudulent intent.

The government contends that the jury instruction was correct, if considered in its totality. It claims that the circumstances surrounding Dyer's filing of the amended return demonstrate a pattern of willful concealment and permitted the jury to infer that Dyer knew the 1986 return was incorrect when he filed it. While an inference of willfulness based on circumstantial evidence is permissible, *see generally, United States v. Schiff,* 801 F.2d 108, 111 (2d Cir. 1986) ("willfulness of one accused of tax crimes may be proved by circumstantial evidence"), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987); *United States v. MacKenzie,* 777 F.2d 811, 818 (2d Cir.1985) ("knowledge of the law was inferable and proven from" particular acts of the defendants), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 977 (1986); *United States v. Schiff,* 612 F.2d 73, 77–78 (2d Cir.1979) ("willfulness may be shown by means of circumstantial evidence alone"), and while there may have been sufficient evidence to permit us to affirm the conviction had a correct instruction been given, a charge such as this one, that permits the jury to infer willfulness solely from the filing of an amended return, is simply unacceptable.

■■■ Finally, while erroneous jury instructions are sometimes subject to harmless error analysis, *United States v. Torres,* 845 F.2d 1165, 1171 (2d Cir.1988), it is apparent that here the jury may have been seriously misled. The instruction wrongly permitted the jury to find Dyer's willfulness, the key issue of that count of the indictment, based solely on the filing of an amended return. Moreover, Dyer was convicted only on this count, and was acquitted on the other six. Under these cir-

cumstances, we cannot ignore the erroneous jury charge as harmless error.

## CONCLUSION

Reversed and remanded.