**UNITED STATES of America,
Appellee,**

v.

**Franklin BOYKOFF, Defendant–
Appellant.**

No. 02–1435.

United States Court of Appeals,
Second Circuit.

May 21, 2003.

Kathryn Keneally, Fulbright & Jaworski L.L.P., New York, N.Y., for Appellant.

Barbara Guss, Assistant United States Attorney (James B. Comey, United States Attorney for the Southern District of New York, Meir Feder, Gary Stein, Assistant United States Attorneys, of counsel), New York, N.Y., for Appellee.

PRESENT: F.I. PARKER, and SACK, Circuit Judges.*

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 21st day of May, two thousand and three.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be, and it hereby is, affirmed.

Defendant-appellant Franklin Boykoff appeals from a July 19, 2002, judgment after a jury trial, convicting him on fifteen counts of tax fraud and related offenses under 18 U.S.C. § 371 (conspiracy to defraud the United States), 26 U.S.C. §§ 7201 (income tax evasion), 7206(1) (subscribing false returns), 7206(2) (aiding the preparation of false returns), 7212(a) (interfering with the administration of the Internal Revenue Code), and acquitting him on the remaining eight counts of aiding the preparation of false returns under 26 U.S.C. § 7206(2). Boykoff was sentenced to fifty-seven months' imprisonment, three years' supervised release, a $75,000 fine, prosecution costs of $28,610.79, a $950 special assessment, and restitution to the Internal Revenue Service ("IRS") of $290,219. Boykoff makes numerous arguments of trial and sentencing errors, all of which are without merit.

---

* The Honorable Guido Calabresi of the United States Court of Appeals for the Second Circuit, who was originally a member of the panel, recused himself prior to oral argument. The appeal is being decided by the remaining two members of the panel, who are in agreement. *See* 2d Cir. R. § 0.14(b); *Murray v. NBC*, 35 F.3d 45, 46–48 (2d Cir.1994), *cert. denied*, 513 U.S. 1082, 115 S.Ct. 734, 130 L.Ed.2d 637 (1995).

*The Exclusion of the Expert Psychiatric Testimony*

Boykoff argues that the district court erred by excluding expert psychiatric testimony diagnosing him with bipolar disorder and attention deficit disorder. Boykoff wanted to offer the testimony to show that he was disorganized, unfocused, and often late, consistent with his argument that any errors in the relevant tax returns were due to carelessness, not willfulness.

The district court excluded Zonana's testimony for two reasons. *See United States v. Boykoff,* 186 F.Supp.2d 347, 348–50 (S.D.N.Y.2002) (*"Boykoff III"*). First, the court found that Boykoff failed to demonstrate an adequate link between the proffered testimony and the specific intent of the crimes under Fed.R.Evid. 702. Second, the court concluded that the evidence would be more misleading to the jury than probative under Fed.R.Evid. 403.

We review decisions concerning expert testimony for abuse of discretion, according "broad discretion" to the district court in deciding whether to admit or exclude expert testimony. *United States v. Onumonu,* 967 F.2d 782, 787 (2d Cir.1992) (internal quotation marks omitted). We also review evidentiary rulings for harmless error. *United States v. Diallo,* 40 F.3d 32, 35 (2d Cir.1994).

In this case, we need not reach the question of whether the district court abused its broad discretion by excluding the evidence under Rules 702 and 403 because we conclude that the error, if any, was harmless. A jury could not reasonably have found that the excluded expert testimony negated the specific intent of willfulness. As the district court found, the evidence of willfulness was overwhelming. Numerous witnesses—including Boykoff's longtime business partner, his clients, the investigating IRS agent—gave testimony indicating that Boykoff committed sub-

stantial numbers of willful acts over an extended period of time. In addition, the expert expressly asserted that he had not consulted the relevant tax returns and therefore could not link the errors in the returns to Boykoff's medical condition. Moreover, Boykoff failed to identify particular errors in the tax returns that suggest transposed numbers or random, careless mistakes—the kind of errors that could be caused by his attention-deficit disorder or bipolar disorder. Rather, the errors comprise additions of "round numbers" such as $10,000 and $50,000. Finally, we do not think that a jury would be persuaded that the asserted mental conditions could have been the cause of errors that only benefitted Boykoff and his clients. We therefore conclude with "fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," if any error was committed. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

*The Appearance of Bias*

The defendant argues that the district court gave the appearance of improper bias under *United States v. Edwardo-Franco,* 885 F.2d 1002 (2d Cir.1989). The district judge noted at several points that her family experience with attention-deficit disorder informed her view that attention-deficit disorder would not prevent someone from forming criminal intent. While those comments arguably may have been relevant to the question of the district court's ability dispassionately to decide the admissibility of Dr. Zonana's testimony, we do not reach the question of its admissibility, for the reasons discussed above. The comments do not otherwise bear on the court's fairness and impartiality. This case is very different from, and therefore

not controlled by, *Edwardo–Franco,* where the court expressly disparaged people of the defendants' nationality, Colombian. *Id.* at 1005. By contrast, the district court's comments in this case did not indicate bias against any group of which Boykoff is a member.

*The Admission of IRS Agent Dennehy's Testimony*

Boykoff argues that the district court erred by permitting the expert testimony of IRS Agent Dennehy, who testified about his analysis of the defendant's improper reporting of certain personal expenses as business expenses. Boykoff contends that the agent's testimony was improperly admitted as summary, rather than substantiated, evidence under *United States v. Greenberg,* 280 F.2d 472, 476–77 (1st Cir. 1960) (*"Greenberg I"*), and *United States v. Greenberg,* 295 F.2d 903, 908–09 (1st Cir.1961) (*"Greenberg II"*). But the crux of the First Circuit's decision in the *Greenberg* cases was that the agent's testimony was impermissibly based on hearsay. *See Greenberg II,* 295 F.2d at 908. This case does not present a similar hearsay problem. Boykoff's argument under the *Greenberg* cases therefore fails.

Boykoff also contends that Agent Dennehy's testimony improperly shifted the burden of proof to Boykoff, effectively converting his criminal prosecution into a civil tax audit. But Agent Dennehy was not the trier of fact, and the district court made clear to the jury that Agent Dennehy was testifying only about his opinion, that the jury was responsible for deciding whether each item was a proper business deduction, and that this criminal prosecution differed from a civil audit in that the government was required to prove the defendant's guilt beyond a reasonable doubt and the defendant was not required to prove anything. Moreover, as the court pointed out in the jury charge,

the government was not required to prove beyond a reasonable doubt "each and every item that it claims was income to Franklin Boykoff" or "the exact amount of the tax deficiency"; rather, the government needed only to "prove[ ] beyond a reasonable doubt that there was a substantial tax deficiency." (Tr. of Proceedings before Hon. Colleen McMahon in the United States District Court for the Southern District of New York, on Jan. 27—Feb. 8, 2002, at 1802. ("Tr.").) In sum, the district court did not abuse its "broad discretion," *Onumonu,* 967 F.2d at 787, by admitting Agent Dennehy's expert testimony.

*The Jury Charge: Burden-shifting*

The defendant also argues that the district court impermissibly shifted the burden of proof to the defendant by stating in the jury charge that taxpayers are legally required to keep records documenting the information shown on their tax returns. The defendant did not object to this aspect of the charge at trial, so we review it for plain error, that is, for "(1) error, (2) that is plain, and (3) that affects substantial rights." *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal punctuation omitted). If those three conditions are met, we may exercise our discretion to notice a forfeited error, "but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal punctuation omitted).

It appears that there is no error here, much less a plain one. The court correctly stated the law. *See* 26 C.F.R. § 1.6001–1. And the defendant has pointed to no binding authority holding that it is error to refer to these requirements in a criminal tax case. The defendant merely cites a First Circuit case that observes in a footnote that evidence that a defendant failed to file a return was improperly ad-

mitted, because there was no evidence that the particular defendant even owed a tax. *See Greenberg I,* 280 F.2d at 474 n. 2. In addition, the Supreme Court precedent relied on by *Greenberg I, Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), did not hold that a jury may not draw inferences from a taxpayer's failure to file a return or pay a tax; *Spies* held only that the combined failure to pay and failure to file are not sufficient to prove criminal tax evasion. *See Spies,* 317 U.S. at 500. Thus, in the case at bar, even if there was error in the district court's instruction about the record-keeping requirements of the Internal Revenue Code—which seems very unlikely—that error was not plain.

Moreover, immediately after instructing the jury about the record-keeping requirements, the court explained the burden of proof in a criminal case and distinguished this criminal case from a civil audit. Even if the record-keeping instruction was mistaken, then, any prejudice engendered by it was minimal.

*The Jury Charge: The Explanation of an Accountable Plan*

Boykoff argues that the court misstated a specific matter of tax law in the charge to the jury: whether an employee's expenses, when paid directly by the employer, count as income to the employee.

We review jury charges *de novo. United States v. Dyer,* 922 F.2d 105, 107 (2d Cir.1990). When reviewing a jury instruction, we consider the disputed charge "within the context of the district court's charges in their entirety." *United States v. Feliciano,* 223 F.3d 102, 120 (2d Cir. 2000), *cert. denied,* 532 U.S. 943, 121 S.Ct. 1405, 1406, 149 L.Ed.2d 348 (2001) (citing *United States v. Caban,* 173 F.3d 89, 94 (2d Cir.), *cert. denied,* 528 U.S. 872, 120 S.Ct. 174, 145 L.Ed.2d 147 (1999)). "An appellant bears the burden of showing that the requested instruction accurately represented the law in every respect and that, viewing as a whole the charge actually given, he was prejudiced." *United States v. Abelis,* 146 F.3d 73, 82 (2d Cir.1998) (internal quotation marks omitted), *cert. denied,* 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999).

In this case, the district court gave the parties a copy of the jury charge in advance and gave the parties an opportunity to challenge any aspect of it on the morning of its delivery. In the original charge distributed to the parties for review, the district court made two separate statements about the tax status of business expenses—in one part explaining that direct payment of expenses by an employer counts as income to the employee, and in another part explaining that, in certain circumstances, reimbursement of business expenses by an employer constitutes an "accountable plan" under which the expenses do not count as income to the employee. For the purposes of this discussion, we accept that the charge, as written, was misleading. *See* 26 U.S.C. § 62(a); 26 C.F.R. § 1.62–2(c); 1 Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts ¶ 2.1.3 (3d ed.1999).

Although we review jury instructions *de novo, Dyer,* 922 F.2d at 107, " '[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.' " *United States v. Crowley,* 318 F.3d 401, 412 (2d Cir.2003) (quoting Fed.R.Crim.P. 30). Despite having been given a printed copy of the charge the day before and being present when the government proposed a modification to precisely the paragraph defense counsel later challenged, de-

fense counsel did not object to the charge before it was delivered to the jury. Although defense counsel objected before the jury began deliberating, he did not "distinctly" state "the grounds of the objection." *Crowley*, 318 F.3d at 412. When the court asked defense counsel to "[s]how me something" to support defense counsel's claim about the law of direct payments, defense counsel failed to do so. (Tr. at 1842.) The judge cannot be expected to correct an instruction when the objecting party fails to explain or to offer support for his objection. *Cf. United States v. Phillips*, 522 F.2d 388, 390–91 (8th Cir.1975) (rejecting the defendant's argument that "he complied with Rule 30 by tendering to the trial court the standard cautionary informer instruction ... and stating that he had no objection to the court's chosen instruction 'other than' that the defendant's requested charge 'better state(s) the law as regards to credibility of witnesses in this case"'" (footnote omitted)). Since the defendant failed to comply with the requirements of Rule 30, we review for plain error only. *See Crowley*, 318 F.3d at 414.

■ The error, if any, was not plain. The defendant does not argue on appeal that the jury instruction was erroneous; he argues only that "[t]he tax law is not as absolute as the trial court set out." Appellant's Br. at 38. Defense counsel's proposed alternative instruction was "[j]ust a simple statement that 'I instructed you that a direct payment by the employer of an expense is income to the employee. That's incorrect. It's not income." (Tr. at 1841.) If the problem with the court's charge is that it was too absolute, as the defendant argues on appeal, then the defendant's proposed jury instruction also did not "accurately represent[ ] the law in every respect." *Abelis*, 146 F.3d at 82. Not only did defense counsel fail to distin-

guish the "expenses" in his charge as *business* expenses, defense counsel also represented the relevant tax law as absolute by asking the court to say that its prior instruction was "incorrect" and to assert the direct opposite. (Tr. at 1841.)

Finally, the prejudice, if any, was minimal. The key question before the jury was whether the relevant expenses were business expenses rather than personal expenses. Because the jury clearly found that the relevant expenses were for personal matters, whether or not the defendant properly declined to report them as income under an accountable plan does not bear upon his conviction for misrepresenting personal expenses as business expenses.

*Denial of Discovery of the IRS Agent's Report*

The defendant argues that he was entitled to discovery of the IRS Special Agent's Report (the "Report") on all of his clients' returns under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Sternstein*, 596 F.2d 528 (2d Cir.1979) ("*Sternstein I*"), because the Report would help him show that any errors in the few clients' returns at issue in the indictment were careless. The district court considered this argument and rejected it in two written decisions. *United States v. Boykoff*, No. 01 Cr. 493 (S.D.N.Y. Dec. 7, 2001) ("*Boykoff I*"); *United States v. Boykoff*, No. 01 Cr. 493 (S.D.N.Y. Dec. 12, 2001) ("*Boykoff II*").

"The management of discovery lies within the sound discretion of the district court, and the court's rulings on discovery will not be overturned on appeal absent an abuse of discretion." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir.1997), *cert. denied*, 525 U.S. 936, 119 S.Ct. 349, 142 L.Ed.2d 288 (1998). Moreover, "evidence of noncriminal conduct to negate the

inference of criminal conduct is generally irrelevant." *United States v. Grimm,* 568 F.2d 1136, 1138 (5th Cir.1978). And the defendant acknowledged to the district court that the type of material he requested is generally not discoverable in a criminal tax case.

As the defendant points out, *Sternstein I* carves out an exception to this rule. 596 F.2d at 529–31. There, we reversed a district court's decision to deny a defendant discovery of an IRS agent's report on the defendant's clients who were not named in the indictment. *Id.* at 531. Like Boykoff, Sternstein argued that this report would show that errors were found in only a few of his clients' reports, thereby bolstering his argument that those errors were careless. *Id.* at 529. We held that the report was important to Sternstein's defense against the government's claim that he falsified returns in order to retain his clients. *Id.* at 530–31.

In *Sternstein I,* the district failed to conduct an in camera appraisal of the value of the evidence. *Id.* at 529. Though we ordered release of the report to the defendant on remand, the purpose of our remand was to permit the district court to "determine whether the Special Agent's report reveals that a substantial number of the returns prepared by appellant which were investigated showed no error." *Id.* at 531. In Boykoff's case, by contrast, the trial court did review the Report in camera and issued a brief written decision that the Report did not contain exculpatory material. The court found that the Special Agent was unable to draw final conclusions in most cases because he lacked underlying records for many of the taxpayers, and the court concluded that "the Special Agent's tentative observations after looking over (but not auditing) other returns prepared by Mr. Boykoff were far from exculpatory." *Boykoff II,* No. 01 Cr. 493, slip op. at

1. As we observed in *Sternstein I,* "the firsthand appraisal of the trial judge is essential in determining the materiality of withheld evidence." 596 F.2d at 531 (citing *United States v. Agurs,* 427 U.S. 97, 114, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Because the district court in this case conducted the necessary examination and found that the Report did not offer exculpatory material, the court committed no error in denying discovery of the Report. *See Sternstein I,* 596 F.2d at 531; *see also United States v. Sternstein,* 605 F.2d 672, 673 (2d Cir.1979) (per curiam) (*"Sternstein II"*) (observing that the trial court's findings "establish that no errors were found in only 8 of the 134 tax returns actually audited by [the] IRS and prepared by the appellant" so the probative value of the materials was "at best negligible" and a new trial was not warranted).

*Exclusion of Certain Testimony the Defendant Proffered as Relevant to the Counts of Aiding and Abetting Dr. Cimmino*

The defendant argues that the district court improperly excluded testimony by the brother of Dr. Cimmino—who prepared Dr. Cimmino's medical partnership books—that Dr. Cimmino deceptively withheld tax-related information from Boykoff. Boykoff wanted to elicit from Cimmino's brother testimony that Dr. Cimmino told his brother not to send certain annual summaries and checks to Boykoff. The district court permitted Boykoff to elicit testimony that Dr. Cimmino's brother did not send the records, but excluded testimony as to what Dr. Cimmino told his brother.

The court rejected the evidence on two grounds. First, the court rejected the defendant's proffer of the testimony to impeach the credibility of Dr. Cimmino's earlier testimony that he did not remember if

he sent the records. This decision was a straightforward application of Rule 608(b), which prohibits the introduction of extrinsic evidence (other than criminal convictions) to impeach the credibility of a witness. *See* Fed.R.Evid. 608(b); *United States v. Moskowitz,* 215 F.3d 265, 270 (2d Cir.), *cert. denied,* 531 U.S. 1014, 121 S.Ct. 571, 148 L.Ed.2d 489 (2000).

Second, the court rejected as collateral the testimony about why Cimmino's brother did not send the records. The court determined that the only matter relevant to whether Boykoff was deceived about Dr. Cimmino's tax situation was whether Boykoff received the records, not why he did or did not receive them. Thus, the court permitted Boykoff to question Cimmino's brother about whether he sent the records to Boykoff, but not why. Cimmino's brother then gave inconsistent testimony, variously asserting that he did not send the annual statements to Boykoff and that he did not remember if he sent them. (Tr. 1171–72.) In light of all the evidence before the district court, particularly the defendant's initial proffer of the evidence for improper impeachment purposes under Rule 608(b), we conclude that the district court did not abuse its discretion by excluding testimony by Dr. Cimmino's brother that Dr. Cimmino told him not to send the disputed records. *See United States v. Pascarella,* 84 F.3d 61, 70 (2d Cir.1996).

*Count Twenty–Three: Whether the Obstruction of Justice Charge Is Time–Barred*

Count twenty-three charged Boykoff with obstructing the IRS's audit of Dr. Weiser, Boykoff's client, by providing false expense receipts and writing false entries in Dr. Weiser's diaries to substantiate improper deductions claimed on Dr. Weiser's individual tax returns for 1990 through 1992. The defendant was charged with obstruction of justice under 26 U.S.C.

§ 7212(a), for which the statute of limitations is defined by 26 U.S.C. § 6531. Section 6531 provides for a three-year statute of limitations except in enumerated situations, such as a conviction under section 7212(a). *See* 26 U.S.C. § 6531(6). The defendant argues that the six-year statutory period applied to section 7212(a) under section 6531(6) does not apply to his offense because he was not charged with "intimidation of officers and employees of the United States," as named in a parenthetical in section 6531(6). Rather, he was charged with the aspect of section 7212(a) that covers corrupt interference with the administration of the Internal Revenue laws, the so-called omnibus clause of section 7212(a).

The application of a statute of limitations is a matter of law that we review *de novo. Corcoran v. New York Power Authority,* 202 F.3d 530, 542 (2d Cir.1999), *cert. denied,* 529 U.S. 1109, 120 S.Ct. 1959, 146 L.Ed.2d 794 (2000). Courts have uniformly held that the parenthetical in section 6531(6) is explanatory, not limiting, and applies to all conduct under section 7212(a). *See, e.g., United States v. Kassouf,* 144 F.3d 952, 959 (6th Cir.1998); *United States v. Workinger,* 90 F.3d 1409, 1413–14 (9th Cir.1996); *see also United States v. Kelly,* 147 F.3d 172, 177 (2d Cir. 1998) (rejecting the defendant's argument on plain error review). We therefore conclude that the district court properly rejected the defendant's argument. (Tr. 1145.)

*Count Twenty–Three: Admission of Statements to Agent Monachino*

Boykoff argues that the district court erred by denying his motion to suppress statements made by him and Dr. Weiser during the July 13, 1995, interview of Dr. Weiser conducted by IRS Agent Monachino. The defendant argues that his rights were violated because Agent Monachino

was actually conducting a criminal investigation under the auspices of a civil audit. Judge McMahon conducted a hearing on the matter on the first day of trial and, in a decision dated January 23, 2002, concluded that the statements were admissible because Agent Monachino was not acting as an agent of the Criminal Investigation Division, *see Boykoff III*, 186 F.Supp.2d at 352, and the statements were obtained during a non-custodial interrogation without threats or promises, *id.* at 353.

When reviewing a district court's ruling on a motion to suppress, we review the factual findings for clear error and the legal conclusions *de novo. United States v. Casado*, 303 F.3d 440, 443 (2d Cir.2002); *United States v. Peterson*, 100 F.3d 7, 11 (2d Cir.1996). We stated in *United States v. Squeri*, 398 F.2d 785 (2d Cir.1968), that, "even if the IRS had contemplated criminal proceedings against [the defendant], there would be no merit to the claim of deception; the information that a taxpayer's returns are under audit gives sufficient notice of the possibility of criminal prosecution regardless of whether the agents contemplate civil or criminal action when they speak to him," *id.* at 788. *See also United States v. Kontny*, 238 F.3d 815, 819–20 (7th Cir.), *cert. denied*, 532 U.S. 1022, 121 S.Ct. 1964, 149 L.Ed.2d 758 (2001). We conclude that the district court committed no error by admitting the testimony of Agent Monachino.

*Sentencing*

Boykoff argues that his sentence should be vacated because the district court erred 1) in applying an enhancement for sophisticated concealment under U.S.S.G. § 2T1.4(b)(2), and 2) in calculating his tax loss for purposes of determining his base offense level.

U.S.S.G. § 2T1.4(b)(2) provides for a 2–level increase in the defendant's offense level if the offense of aiding tax fraud

involved sophisticated concealment. We review *de novo* the district court's decision regarding the sophisticated-concealment enhancement, giving due deference to the district court's Guidelines application. *See United States v. Lewis*, 93 F.3d 1075, 1080 (2d Cir.1996).

At sentencing and on appeal, the government argued that the sophisticated-concealment enhancement was appropriate because of Boykoff's conduct in helping a client who was being audited to fabricate restaurant receipts and expense journal entries, and in paying personal expenses from business accounts and characterizing those expenses as business expenses. In applying the sophisticated-concealment enhancement, the district court observed that "[t]he Weiser scheme alone constitutes sophisticated concealment. The fabrication of receipts and expense journals is the very essence of sophisticated concealment, because it relies on Mr. Boykoff's knowledge of what the taxpayer would need to justify the expenses." (Tr. of Proceedings before Hon. Colleen McMahon in the United States District Court for the Southern District of New York, on June 24, 2002, at 31.)

■ As we stated in *Lewis*,

even though this tax-evasion scheme cannot be described as singularly or uniquely sophisticated, it is more complex than the routine tax-evasion case in which a taxpayer reports false information on his 1040 form to avoid paying income taxes ... or asserts he paid taxes that he did not pay.... Even if each step in the planned tax evasion was simple, when viewed together, the steps comprised a plan more complex than merely filling out a false tax return.

93 F.3d at 1082, 1083 (overturning a district court's decision *not* to apply a sophisticated-concealment enhancement where

the defendant claimed fraudulent deductions by writing checks to non-existent entities drawn on his bank account, which were deposited into other accounts from which the defendant paid his personal expenses). In the case at bar, fabricating receipts and expense journal entries involved "a plan more complex than merely filling out a false tax return." *Id.* at 1082; *see also Kontny,* 238 F.3d at 821. We therefore conclude that the district court did not err in applying the enhancement for sophisticated enhancement.

We review *de novo* the district court's calculation of the "tax loss" attributable to the defendant. *United States v. Bove,* 155 F.3d 44, 46–47 (2d Cir.1998). Having reviewed the tax-loss calculation and the defendant's arguments challenging it, we conclude that the district court committed no error.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.