# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1136

_____

United States of America

*Plaintiff - Appellee*

v.

Peter A. Giambalvo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 25, 2015
Filed: January 13, 2016

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury found Peter A. Giambalvo guilty of one count of corruptly obstructing or impeding the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a) ("Count 1"), and eight counts of willfully filing a false income tax return,

in violation of 26 U.S.C. § 7206(1) ("Counts 2–9"). The district court[1] sentenced Giambalvo to 16 months' imprisonment. On appeal, Giambalvo argues that (1) Count 1 was barred by the statute of limitations; (2) the district court erred in granting the government's motion in limine to exclude evidence from the Internal Revenue Service (IRS) relating to other individuals who may have filed false returns similar to those that Giambalvo filed; (3) the district court's exclusion of evidence that Giambalvo did not owe any taxes, i.e., have a tax deficiency, violated Giambalvo's right to due process by prohibiting him from establishing a complete defense; (4) the district court erred in denying Giambalvo's motion for judgment of acquittal based on Giambalvo's argument that the documents that he sent to the IRS were not "tax returns"; and (5) the district court violated his right to due process by excluding evidence that the income tax returns that Giambalvo mailed to the IRS were not "filed" on the date alleged in the indictment. We affirm.

## I. *Background*

Giambalvo was employed with The Boeing Company ("Boeing") as a systems engineer. Boeing, as Giambalvo's employer, was required to withhold federal income tax from his wages unless he was exempt from withholding as reflected on the employee's Form W-4. Giambalvo's electronic personnel records reflect that in the "Special Withholding Tax Status" section of his Form W-4, "Maintain Taxable Gross" was selected. This selection meant that Giambalvo's wages were taxable but exempt from withholding of federal taxes.

Boeing maintained electronic copies of the Form W-4 that Giambalvo submitted to Boeing for 2005 and 2006. Giambalvo provided the information contained in these documents. On the Form W-4's, Giambalvo stated that he was exempt from withholding, had the right to a refund of all federal income taxes

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

withheld because he had no tax liability, and expected a refund of all federal income taxes withheld because he expected to have no liability.

On April 13, 2006, Boeing received an "IRS lock-in letter" from the IRS informing Boeing that Giambalvo was not entitled to claim complete exemption from withholding or more than a specified number of withholding allowances. The letter instructed Boeing to disregard the information on the Form W-4 and withhold income tax based upon the marital status of single and withholding allowances of zero. The IRS directed Boeing to provide a copy of the lock-in letter to Giambalvo.

In accordance with the IRS lock-in letter, Boeing changed Giambalvo's withholding status from exempt to nonexempt and began withholding taxes from Giambalvo's pay. The payroll department changed Giambalvo's withholding status from "maintain taxable gross to none," meaning that taxes would be withheld from his wages at the highest rate. His marital status was changed to single, and he had zero exemptions from withholding. For the years 2003 to 2010, Giambalvo's wages from Boeing ranged from $15,958.99 to $87,472.44.

In September 2010, IRS Revenue Officer Richard Laramie, after investigating Giambalvo's tax payments, determined that Giambalvo had not filed income tax returns for the years 2000 to 2009. On September 28, 2010, Officer Laramie unsuccessfully attempted to contact Giambalvo at his reported address of 437 Turkey Creek Road, Lincoln County, Missouri ("Turkey Creek Road"). In late December 2010, Giambalvo called Officer Laramie and blamed his failure to file tax returns on his having fallen "into the wrong crowd." Giambalvo told Officer Laramie that he now had withholding, wanted to file his returns, and wanted to pay any taxes owed. Giambalvo and Officer Laramie agreed that Giambalvo would send two returns to the IRS every two weeks beginning on January 18, 2011. Officer Laramie told Giambalvo that he would send Giambalvo information from IRS records showing all income that was reported as having been received by Giambalvo. Officer Laramie

provided this information to Giambalvo before he received the tax returns that Giambalvo mailed to him.

On January 26, 2011, Officer Laramie received an envelope sent via certified mail and addressed to him at the IRS Office in Earth City, Missouri. The envelope had a return address of 19 Julie Lane, St. Peters, Missouri 63376 ("Julie Lane"), and it was postmarked January 25, 2011. The envelope contained Giambalvo's federal income tax returns for the years 2000 to 2010 and a letter from Giambalvo to Officer Laramie. Officer Laramie date-stamped each return in accordance with IRS procedure "[b]ecause the date stamp indicates the filing date." According to Officer Laramie, "[i]t's a date that [the IRS] consider[s] as the date that the return was provided to [the IRS]." All of the returns mailed to Officer Laramie were in the name of "Peter A. Giambalvo," contained the Julie Lane address, had a filing status of "single," and claimed one exemption. Each return listed "zero" for all items of income, adjustments to income, adjusted gross income, taxable income, and tax. Each return claimed the standard deduction for a single taxpayer and the amount of one personal exemption. Each return claimed a refund of an amount of federal income tax withheld on Forms W-2 and 1099. All of the returns contained a statement that they were filed under penalty of perjury.

IRS Special Agent Daniel Cobb was assigned to investigate Giambalvo in the spring of 2011 because "Giambalvo had not filed tax returns for a number of years and then, upon contact with the revenue officer, had filed a number of frivolous zero-based tax returns and a letter accompanying it." On May 10, 2011, Agent Cobb went to Giambalvo's purported residence at Turkey Creek Road after being unable to reach Giambalvo by telephone or at Boeing. Agent Cobb spoke to a woman who identified herself as "Shelley Giambalvo." She told Agent Cobb that Giambalvo was not present. Later that same day, Giambalvo called Agent Cobb. Agent Cobb attempted to set up a face-to-face meeting with Giambalvo, but Giambalvo told Agent Cobb that he was a "busy man" and could not make himself available to meet with

Agent Cobb. Giambalvo initially told Agent Cobb "to send all mail to 91 Julie Lane in St. Peters, and then he quickly corrected himself and said 19 Julie Lane." In reality, Giambalvo never lived at Julie Lane; it was the home of a childhood friend. Giambalvo told Agent Cobb that he had filed ten years of signed tax returns with Officer Laramie and had included a cover letter explaining his position that he was not subject to tax. Giambalvo added that he expected a full refund of all money that had been withheld from him.

Giambalvo testified that he filed tax returns stating that his wages and other income were zero after reading Peter Hendrickson's book, *Cracking the Code*. The book asserts that only income from the federal government is subject to income tax. Giambalvo stated that Hendrickson's book was consistent with what he had read from materials that the Institute of Global Prosperity had published stating that the income tax could only be applied to federal employees or those who get income from the federal government. Giambalvo testified that "[t]he only difference between Peter Hendrickson and the others is that he says that if your employer is improperly withholding money from you, you can get it back."

Giambalvo was indicted on March 5, 2014, and charged with one count of corruptly obstructing or impeding the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a) ("Count 1"), and eight counts of willfully making and subscribing a false U.S. Individual Income Tax Return, in violation of 26 U.S.C. § 7206(1) ("Counts 2–9"). The jury found Giambalvo guilty on all counts, and the district court sentenced Giambalvo to 16 months' imprisonment.

## II. *Discussion*

On appeal, Giambalvo argues that (1) Count 1 was barred by the statute of limitations; (2) the district court erred in granting the government's motion in limine to exclude evidence from the IRS relating to other individuals who may have filed false returns after the publication of *Cracking the Code* similar to those that

Giambalvo filed; (3) the district court's exclusion of evidence that Giambalvo did not owe any taxes, i.e., have a tax deficiency, violated Giambalvo's right to due process by prohibiting him from establishing a complete defense; (4) the district court erred in denying Giambalvo's motion for judgment of acquittal based on Giambalvo's argument that the documents that he sent to the IRS were not "tax returns"; and (5) the district court violated his right to due process by excluding evidence that the income tax returns that Giambalvo mailed to the IRS were not "filed" on "January 26, 2011."

## A. *Statute of Limitations*

Count 1 charged Giambalvo with violating 26 U.S.C. § 7212(a), which provides, in pertinent part:

> (a) Corrupt or forcible interference.—Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, *or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title*, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years . . . .

(Emphasis added.)

Giambalvo was charged under the second or "omnibus" clause of § 7212(a), as the indictment alleges that he "did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws." The first clause of § 7212(a)—the "intimidation" clause—prohibits the use of force or threats of force to intimidate or impede agents of the United States in the performance of their duties under the internal revenue laws.

Section 6531 of 26 U.S.C. governs the limitations period for criminal prosecutions under § 7212(a). It provides, in relevant part:

> No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, *except that the period of limitation shall be 6 years—*
>
> * * *
>
> (6) for the offense described in section 7212(a) (relating to intimidation of officers and employees of the United States) . . . .

26 U.S.C. § 6531(6).

Prior to trial, Giambalvo moved to dismiss Count 1 of the indictment, arguing that a charge under the second or "omnibus" clause of § 7212(a) is governed by the three-year limitations period under § 6531 instead of the six-year limitations period provided for in § 6531(6). He asserts that the parenthetical language in § 6531(6), which describes § 7212(a) as "relating to intimidation of officers and employees of the United States," limits the application of the six-year limitation period to cases brought under the "intimidation" clause of § 7212(a). Thus, prior to trial, Giambalvo moved to dismiss Count 1 as time-barred by the applicable statute of limitations because the indictment alleged that the offense occurred "[o]n or about January 26, 2011," and the indictment was returned on March 5, 2014—beyond the three-year limitations period.

The district court denied the motion, pointing out that "every court that's looked at this has found that the six-year statute applies to all actions of prosecutions . . . under 7212(a). . . . [E]very court that's looked at it has found that the parenthetical language is descriptive and not limiting." The court's opinion was that the statute's

-7-

plain language "says one of the exceptions is those prosecutions brought under 7212(a). Doesn't say part of 7212(a). And so the plain reading of the statute and the interaction of the statutes result in a finding that a six-year statute of limitation applies here . . . ."

On appeal, Giambalvo argues that the district court erred in denying his motion to dismiss the indictment as time-barred by the statute of limitations set forth in § 6531(6). Applying de novo review, we reject Giambalvo's argument. *See United States v. Boykoff*, 67 F. App'x 15, 22 (2d Cir. 2003) (summary order) ("The application of a statute of limitations is a matter of law that we review *de novo*." (citation omitted)). "Courts have uniformly held that the parenthetical in section 6531(6) is explanatory, not limiting, and applies to all conduct under section 7212(a)." *Id*. (citing *United States v. Kassouf*, 144 F.3d 952, 959 (6th Cir. 1998) (finding "relating to" parenthetical in 26 U.S.C. § 6531(6) descriptive); *United States v. Workinger*, 90 F.3d 1409, 1413–14 (9th Cir. 1996) ("To forestall a defendant's evasion of prosecution by use of the shorter three-year statute, Congress expressly included § 7212(a) offenses within the list of the six-year exceptions. In short, the structure of § 6531 makes it apparent that the parenthetical language in § 6531(6) is descriptive, not limiting. Corruption was within the section's purview. The result is that the six-year statute of limitations applied to Count 7."); *United States v. Kelly*, 147 F.3d 172, 177 (2d Cir. 1998) (rejecting the defendant's argument that the three-year statute of limitations applied to the omnibus clause on plain error review)).[2]

---

[2]*See also United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997) (noting that the applicable statute of limitations for § 7212 was six years and applying it to omnibus clause violation); *United States v. Swanson*, 112 F.3d 512, 1997 WL 225446, at *2 (4th Cir. 1997) (per curiam) (finding parenthetical in § 6531(6) to be merely descriptive of entire § 7212(a) and therefore not limited to intimidation clause of that section); *United States v. Brennick*, 908 F. Supp. 1004, 1017–18 (D. Mass. 1995); *United States v. Sarcia*, No. 97 CR 262, 1997 WL 458426, at *1 (N.D. Ill. Aug. 4, 1997) (adopting *Workinger* and holding that parenthetical language in § 6531(6) is descriptive rather than limiting, and holding that the statute of limitations

-8-

We join the courts that have addressed the issue and conclude that the "relating to" parenthetical is not limiting. The six-year statute of limitations thus applies to Count 1, and that charge falls within that limitations period. Therefore, we hold that the district court did not err in denying Giambalvo's motion to dismiss the indictment as time-barred by the statute of limitations.

B. *Evidence Relating to Similarly-Filed Tax Returns*

The government moved in limine to exclude the testimony of IRS employee Shauna Henline relating to tax returns that the IRS may have received after the publication of Peter Hendrickson's book, *Cracking the Code*, that allegedly were similar to Giambalvo's tax returns. Henline is an IRS employee who oversees "frivolous returns." According to the government, Giambalvo was attempting to introduce evidence of a good-faith defense to the charges by showing similarities between the returns that he filed and the returns of Peter Hendrickson, who was referred to in a civil case in the Eastern District of Michigan in 2006. The government argued that a good-faith defense is subjective and that Henline's testimony relating to similarities with returns filed by other defendants fails to prove Giambalvo's beliefs. The government explained, "He is trying to show reliance on this book, *Cracking the Code*, written by this man named Peter Hendrickson, but I don't think that having the witness talk about similarities in returns is sufficient to do that."

In response, Giambalvo's counsel confirmed for the court that Henline had never met Giambalvo. Nevertheless, he argued that her testimony was relevant

> [b]ecause she is the witness who has testified on behalf of the United States under oath in the Eastern District of Michigan that she has . . . read *Cracking the Code* . . . . Ms. Henline has testified in the Eastern District of Michigan . . . that before she read this book, the IRS was not receiving the so-called zero returns . . . . Once that book was published

for § 7212(a) in its entirety is six years).

-9-

in 2003, Ms. Henline started seeing thousands and thousands of these so-called zero returns.

After hearing from Giambalvo's counsel and finding his argument unpersuasive, the court excluded Henline's testimony, stating, in relevant part:

> There is no evidence before me that Ms. Henline has any knowledge about Mr. Giambalvo, or his returns, other than there was a fax sent to the office where she works. Whether 10 people, or 50 people, or hundred people filed a similar return, it doesn't help or hurt this case.

The court found that Henline's testimony would not "enlighten us as to Mr. Giambalvo's subjective belief about the book, or that he even read the book, or anything about his return." Furthermore, the court concluded that testimony concerning other taxpayers' returns "doesn't help us one way or the other" as to Giambalvo's returns and therefore was "not relevant and not admissible." Giambalvo asked the Court to reconsider its ruling during trial, but the district court declined. The court noted that Giambalvo's counsel had provided no proof that Giambalvo and Henline had ever spoken.

On appeal, Giambalvo argues that the district court abused its discretion in excluding Henline's testimony because it was relevant to his good-faith defense. Specifically, Giambalvo argues that by excluding testimony that the IRS began receiving many "zero tax returns" similar to Giambalvo's tax returns after *Cracking the Code* was published, the district court excluded "key circumstantial evidence relevant to the reasonableness of Giambalvo's good-faith beliefs." Giambalvo contends that the district court's ruling was in direct contravention of *Cheek v. United States*, 498 U.S. 192 (1991).

"Filing false tax returns is a specific intent crime requiring a showing of willfulness, which 'simply means a voluntary, intentional violation of a known legal

duty.'" *United States v. Mathews*, 761 F.3d 891, 893 (8th Cir. 2014) (quoting *Cheek*, 498 U.S. at 201). In *Cheek*, the Court held "that the government must demonstrate that the defendants did not have a subjective belief, however irrational or unreasonable, that the income tax system did not apply to them." *United States v. Powell*, 955 F.2d 1206, 1211 (9th Cir. 1992) (citing *Cheek*, 498 U.S. at 201–02 (1991)). *Cheek*'s premise "is that a person cannot be convicted of willful failure to file a tax return[3] if he subjectively believes in good faith that the tax laws do not apply to him. The test does not focus on the knowledge of the reasonable person, but rather on the knowledge of the defendant." *Id*. Ultimately, "the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable." *Cheek*, 498 U.S. at 202.

"The Supreme Court in *Cheek* held that 'forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision.'" *Powell*, 955 F.2d at 1214 (quoting *Cheek*, 498 U.S. at 203). This means that a court "ordinarily cannot exclude evidence *relevant* to the jury's determination of what a defendant *thought the law was* in § 720[6] cases because willfulness is an element of the offense." *Id*. (first emphasis added). Therefore, "statutes or case law upon which the defendant claims to have *actually relied* are admissible to disprove that element if the defendant lays a proper foundation which demonstrates such reliance." *Id*. (citing *United States v. Harris*, 942 F.2d 1125, 1132 n.6 (7th Cir. 1991); *United States v. Willie*, 941 F.2d 1384, 1391–99 (10th Cir. 1991)). By contrast, "materials upon which the defendant does not claim to have relied . . . can be excluded as irrelevant and unnecessarily confusing because *only the defendant's subjective belief is at issue*." *Id*. (emphasis added).

---

[3]*Cheek* involved failure to file a tax return, in violation of 26 U.S.C. § 7203; that section, like § 7206, requires a showing of "willfulness."

-11-

Here, the district court properly excluded Henline's testimony. Giambalvo was the best source of his subjective beliefs, and he testified as to those beliefs. *See United States v. Mann*, 884 F.2d 532, 538 (10th Cir. 1989) ("Because a good-faith defense turns on the defendant's subjective belief, [the defendant's] testimony regarding his views [is] more probative than [other evidence] representing the source or articulation of those beliefs."). By contrast, Henline could not have offered any testimony concerning Giambalvo's subjective belief because Giambalvo and Henline had never spoken; in other words, Henline had no knowledge of how *Cracking the Code* impacted Giambalvo. Furthermore, as the government points out, the fact that other taxpayers may have filed returns similar to Giambalvo's is not evidence that Giambalvo acted in good faith or that those taxpayers acted in good faith when they filed their returns. Nor does Giambalvo claim to have relied on certain other taxpayers' tax returns. Accordingly, we hold that the district court did not abuse its discretion in excluding Henline's testimony. *See United States v. Ballew*, 40 F.3d 936, 941 (8th Cir. 1994) (standard of review).

## C. *Evidence of Tax Loss*

Prior to trial, Giambalvo notified the government of his intent to call H&R Block accountant Claudia Bradshaw as an expert witness. Bradshaw would testify that, based on her preparation of Giambalvo's tax returns *dated May 31, 2014*, for the tax years at issue in the case, Giambalvo did not owe any taxes on January 26, 2011. According to Bradshaw's proposed testimony, Giambalvo would have been due a substantial tax refund had he filed proper and timely federal income tax returns. The government moved in limine to exclude evidence of Giambalvo's tax returns and tax-loss data prepared and filed post indictment.

The district court granted the government's motion in limine during a pretrial motion hearing, concluding that "the suddenly filed tax returns under the established law clearly doesn't come in" because these tax returns were filed "[m]ore than ten years later, more than three and a half years after the indictment [was] issued." As a

result, the court found the probative value of such returns "minimal," but the prejudice to be "great." According to the court, under § 7206(1), "the amount of tax loss isn't probative" to whether Giambalvo's misstatements could have hindered the IRS in carrying out its "functions as to verification or the accuracy of the return or unrelated tax return." The court concluded that the parties would not "get into tax loss" because "[a]ll we are looking at is whether [Giambalvo] made misstatements on his tax returns at the time he made the returns, because it is a perjury related statute. It is irrelevant whether or not there was a tax deficiency."

The court later reiterated that "[w]e are not getting into tax loss, or subsequently filed tax returns," even though the court did suggest that it "would keep the door slightly ajar for conversation." Giambalvo's counsel then asked whether the court's ruling was that the evidence was "also not relevant for corruptly" under 26 U.S.C. § 7212(a). The court responded, "As to the entry of the zero, yes, I'm keeping it out. I'm overruling all of the arguments that you made."

During trial, Giambalvo counsel's asked the court to reconsider this ruling after Officer Laramie testified that his job description included collecting taxes, arguing that the government had opened the door to Bradshaw's testimony by "cross-examining [Officer Laramie] on the fact that Mr. Giambalvo, objectively speaking, did not actually owe the taxes the revenue officer was seeking to collect is proper both impeachment and substantive evidence that was injected into this trial by the prosecution." He also argued that the government opened the door to introduction of the lack of a tax deficiency through Officer Laramie's testimony "that Mr. Giambalvo called and asked about paying taxes," which "suggest[ed] that Mr. Giambalvo actually owed taxes." The court rejected this argument, explaining that "this case is about—in its most simple, stay-focused terms—whether or not the number [that Giambalvo] wrote on that tax return at zero was correct or if [his] defense that he honestly believed it to be correct, and that's it." The court noted that Officer Laramie never discussed collections even though that is included in his job

-13-

description. According to the court, Officer Laramie "simply went through what was on the documents that [Giambalvo] submitted" without "express[ing] his thoughts about those numbers or his interpretation of those numbers." The court characterized Officer Laramie's testimony as "lay[ing] the foundation for the records coming into evidence" without expressing any "efforts to collect anything." The court advised Giambalvo's counsel that he could "cross-examine [Officer Laramie] on what he received but not . . . to his efforts to collect taxes" because "[h]e never talked about that."

On appeal, Giambalvo argues that the district court's exclusion of evidence that he did not actually owe any income taxes for the tax years at issue violated his right to due process by prohibiting him from establishing a complete defense. Giambalvo intended to prove his lack of tax liability through tax returns prepared and filed after he was indicted for impeding administration of the tax laws and filing false returns.

The Constitution affords "criminal defendants a meaningful opportunity to present a complete defense." *United States v. Petters*, 663 F.3d 375, 381 (8th Cir. 2011) (quotations and citations omitted). But a criminal defendant's "right to present relevant testimony is not without limitation. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id*. (quotation and citations omitted). "For instance, '[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Id*. (alteration in original) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). As a result, "the 'Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'" *Id*. (alterations in original) (quoting *Crane v. Kentucky*, 476 U.S. 683, 689–90 (1986)).

As discussed *supra*, Count 1 charged Giambalvo with obstructing or impeding the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). Counts 2–9 charged Giambalvo with making and subscribing a false income tax return, in violation of 26 U.S.C. § 7206(1), which provides that an individual will be guilty of a felony if he or she "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter."

Neither §§ 7212(a) nor 7206(1) require proof of a tax deficiency. *See, e.g.*, *United States v. Floyd*, 740 F.3d 22, 32 (1st Cir. 2014) ("A conviction for violation of section 7212(a) does not require proof of . . . a tax deficiency . . . ." (citation omitted)); *United States v. Young*, 804 F.2d 116, 119 (8th Cir. 1996) ("In a section 7206(1) prosecution, however, the government need not establish an actual tax deficiency." (citation omitted)).

Because the government need not establish an actual tax deficiency to prove a violation of §§ 7212(a) or 7206(1), the question arises whether a defendant may put on evidence that he did not owe any taxes as a *defense* to such charges. Like our sister circuits, we conclude that the answer is no. This is because "the amount of taxes owed is *irrelevant* to a prosecution for tax fraud." *United States v. Minneman*, 143 F.3d 274, 279 (7th Cir. 1998) (emphasis added) (citing *United States v. Marashi*, 913 F.2d 724, 736 (9th Cir. 1990) ("Section 7206(1) is a perjury statute; it is irrelevant whether there was an actual tax deficiency." (citation omitted)).

Here, the district court excluded Bradshaw's expert testimony that Giambalvo did not owe any taxes and was due a substantial refund on the date that he mailed 11 "zero" income tax returns to the IRS. The court held that evidence of subsequently prepared and filed tax returns is inadmissible in a criminal tax prosecution unrelated

-15-

to tax deficiency collection. The district court found that the probative value of such evidence is much less than the associated unfair prejudice.

The district court's ruling is in accord with our precedent. "We have previously said that 'there is no doubt that self-serving exculpatory acts performed substantially after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime.'" *United States v. Ellesfen*, 655 F.3d 769, 778 (8th Cir. 2011) (quoting *United States v. Radtke*, 415 F.3d 826, 840–41 (8th Cir. 2005) (holding that the district court did not abuse its discretion in excluding evidence that the defendant filed an amended tax return after he had been indicted for willfully subscribing to a known false tax return)).

Giambalvo additionally argues that evidence of the non-existence of tax loss should have been admitted to enable him to contest the element of materiality in the § 7206(1) counts. (Citing *United States v. Clifton*, 127 F.3d 969, 971 (10th Cir. 1997) ("For instance, if a taxpayer's allowable deductions exceed taxable income in a taxable year, no income tax will be due for that year. Therefore, taxpayer's failure to report all taxable income will not affect the computation of tax, which in turn might very well affect the jury's deliberations on the element of materiality. For these reasons, we hold that materiality in a § 7206(1) prosecution is an element of the crime which the district court must submit to the jury, unless of course defendant waives the right."); *United States v. Uchimura*, 125 F.3d 1282, 1285 n.5 (9th Cir. 1997) ("That no additional tax is owed of course has a bearing on materiality, but the question is ultimately one for the jury to decide.").) According to Giambalvo, *Clifton* and *Uchimura* are "the only legal authority on point."

We disagree. Subsequent to *Clifton* and *Uchimura*, the Supreme Court explained that

[t]o obtain a conviction on the [§ 7206(1)] tax offense at issue, the Government must prove that the defendant filed a tax return "which he does not believe to be true and correct as to every material matter." 26 U.S.C. § 7206(1). *In general, a false statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." United States v. Gaudin*, 515 U.S., at 509, 115 S. Ct. 2310 (quoting *Kungys v. United States*, 485 U.S. 759, 770, 108 S. Ct. 1537, 99 L. Ed. 2d 839 (1988) (internal quotation marks omitted)).

*Neder v. United States*, 527 U.S. 1, 16 (1999) (third alteration in original) (emphasis added).

We have recognized that "the government need not establish an actual tax deficiency to demonstrate that [a defendant's] false statements in [his tax] returns were *material*." *United States v. Peiker*, 2 F. App'x 685, 687 (8th Cir. 2001) (per curiam) (citing *Young*, 804 F.2d at 119). Similarly, the Seventh Circuit has held "that proof of a tax deficiency was not essential to prove materiality." *United States v. Bouzanis*, 2003 WL 920717, at *2 (N.D. Ill. Mar. 7, 2003) (citing *United States v. Peters*, 153 F.3d 445, at 461–62 (7th Cir. 1998)).

Giambalvo also argues that evidence of the lack of a tax deficiency was relevant to showing that he did not act "corruptly" under § 7212(a). 26 U.S.C. § 7212(a) ("Whoever corruptly . . . endeavors to intimate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly . . . obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title . . . ."). We have previously indicated our inclination to reject the argument "that the term corruptly is limited to situations in which the defendant wrongfully sought or gained a financial advantage." *United States v. Yagow*, 953 F.2d 423, 427 (8th Cir. 1992) (citing *United States v. Reeves*, 782 F.2d 1323, 1325 (5th Cir. 1986)).

-17-

More recently, the Fifth Circuit has held that, § 7212(a) does not require that the defendant obtain benefits or advantages "under the tax laws." *United States v. Saldana*, 427 F.3d 298, 305 (5th Cir. 2005). The Fifth Circuit observed that "the language of the statute itself does not require that an individual intend to procure a benefit for himself under the tax laws to have formed the requisite *mens rea*." *Id*. Similarly, "the Sixth Circuit [has] affirmed a defendant's conviction for violation of § 7212(a) when the defendant had filed false 1099 and 1096 forms for the sole purpose of intimidating and harassing his creditors." *Id*. (citing *United States v. Bowman*, 173 F.3d 595, 596–97 (6th Cir. 1999)). The Sixth Circuit "held that the defendant's conduct fell within the ambit of § 7212(a)'s proscribed conduct even though he sought no financial advantage or benefit for himself under the tax laws." *Id*. (citing *Bowman*, 173 F.3d at 600).

In line with the Fifth Circuit's and Sixth Circuit's more recent conclusions, we now hold—as we were inclined to do in *Yagow*—that "corruptly" is not limited to situations where the defendant wrongfully sought or gained a financial advantage under the tax laws. If the government was not required to prove that the benefit that Giambalvo sought by his "corrupt" actions to obstruct or impede the IRS was financial in nature, then evidence of the non-existence of a tax loss was not relevant to refute the "corruptly" element of § 7212(a).

Additionally, Giambalvo argues that evidence of the lack of a tax deficiency was relevant to showing that he did not act "willfully" under § 7206(1). *See* 26 U.S.C. § 7206(1) ("Any person who . . . [w]illfully makes and subscribes any return, statement, or other document . . . ."). According to Giambalvo, he is permitted to present circumstantial evidence tending to show his good faith as a defense. Giambalvo asserts that, for approximately eight years, he "subscribed to a belief that was so against his financial interest that it literally cost him more than $30,000—*i.e.*, had he filed proper tax returns, he would have been entitled to receive more than $30,000 back in tax refunds." He maintains that such evidence was admissible

-18-

evidence of his good-faith belief because his actions were against his financial interest.

Giambalvo does not have "'an unfettered right to offer testimony that is . . . otherwise inadmissible under the standard rules of evidence.'" *Petters*, 663 F.3d at 381 (quoting *Taylor*, 484 U.S. at 410). As explained *supra*, because the issue of tax deficiency is not an element that the government must prove—or attempted to prove—then the existence of such deficiency is irrelevant in such prosecutions. While the district could have admitted Giambalvo's evidence of no tax deficiency, it was not an abuse of discretion to exclude it.

Finally, Giambalvo argues that the government opened the door to the admission of tax-loss evidence by IRS Revenue Officer Laramie's testimony that his "[p]rimary duties are to collect taxes and returns." Officer Laramie testified, "[W]e try to determine if returns are due, if there are balances that may be owed on previously filed returns. We then try to collect on those or determine if the person has the ability to pay, you know." The trial record reveals that Officer Laramie did not describe his efforts to collect taxes from Giambalvo; instead, he was only giving his general job description. Therefore, we hold that the district court did not err in rejecting Giambalvo's argument that the government opened the door to admission of tax-loss evidence through Officer Laramie's testimony.

## D. *Tax Returns*

After the government presented its case-in-chief, Giambalvo moved for judgment of acquittal. Giambalvo contended that the government did not prove that the documents, which he sent to the IRS were "tax returns." The district court overruled Giambalvo's motion for judgment of acquittal, finding that sufficient evidence existed for a reasonable jury to conclude that the government satisfied its burden of proof. According to the court, "Form 1040s for the relevant years alleged in the indictment were introduced into evidence, and there is certainly enough

evidence for the jury to find, whether they do or not, that they were false and fraudulent." Giambalvo renewed his motion for judgment for acquittal after the close of all of the evidence and post trial. The district court overruled these renewed motions, concluding that sufficient evidence existed.

Giambalvo argues that the district court should have granted his motion for judgment for acquittal because the government failed to prove that the documents that he submitted to the IRS were "tax returns." He asserts that courts in prosecutions for failure to file tax returns and in civil tax cases have held that tax forms that state that the amounts of certain items of income are zero are not "tax returns" as a matter of law.

In the context of 26 U.S.C. § 7203,[4] "[w]e have given the phrase 'tax return' a narrow and specific meaning." *United States v. Marston*, 517 F.3d 996, 1001 (8th Cir. 2008). "A defendant can be guilty of failure to file a tax return even if he actually files a form with the I.R.S. if that form does not contain 'sufficient information [ ] from which the IRS can calculate tax liability.'" *Id*. (alteration in original) (quoting *United States v. Grabinski*, 727 F.2d 681, 686 (8th Cir. 1984)). Courts applying this standard "have held that a return that contains only zeroes and no information regarding gross income or deductions claimed or only protest information is not considered a valid 'tax return,' so that a person may be convicted for willfully failing to file a return." *Id*. (citations omitted).

But § 7206(1)—the statute of conviction at issue in the present case—is not "limited to 'tax returns.'" *Id*. at 1002. It prohibits "[w]illfully mak[ing] and subscrib[ing] any return, statement, or *other document*, which contains or is verified

---

[4]Section 7203 concerns the willful failure to file a tax return.

by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." 26 U.S.C. § 7206(1) (emphasis added).

In *Marston*, the indictment against a defendant charged under § 7206(1) "allege[d] that [the defendant] filed a '*Form* 1040EZ an individual income tax return,' an 'Employer's Quarterly Federal Tax Return, *Form* 941,' and advised his employees to file an 'Individual Income Tax Return *Form* 1040' with the I.R.S., containing false information (reporting, in most instances, zero wages)." *Id*. at 1001–02. The defendant argued that although "the indictment describe[d] him as having filed false tax returns and aiding and abetting other persons to file false tax returns," the documents that he filed with the IRS failed to satisfy the "legal definition of the phrase 'tax return.'" *Id*. at 1001. Specifically, the defendant argued that the documents could not be "tax returns" because they failed to "provide sufficient information to calculate a tax liability." *Id*. We rejected the defendant's argument, explaining that the indictment's reference "to the forms using their full descriptive titles, including the moniker 'form,' . . . merely indicat[ed] which documents it [was] relying upon to form the basis of the crimes alleged." *Id*. at 1002. We held that the indictment's language did "not require that the government prove these documents were 'tax returns.'" *Id*.

Here, the indictment charged Giambalvo with falsely and fraudulently filing a specific document—"U.S. Individual Income Tax Return, Form 1040." As the government notes, this description is taken from the face of the documents that Giambalvo sent to the IRS. Count 1 charged Giambalvo with violating § 7212(a) by filing eight false and fraudulent U.S. Individual Income Tax Returns, Form 1040. Counts 2–9 charged Giambalvo with violating § 7206(1) by filing eight U.S. Individual Income Tax Returns, Form 1040. Applying *Marston*, the documents that Giambalvo sent to the IRS fall within the definition of "return, statement, or other document" in § 7206(1).

E. *Income Tax Filing Date*

Count 1 of the indictment charged Giambalvo with filing with the IRS eight false and fraudulent U.S. Individual Income Tax Returns, Form 1040 for tax years 2003 through 2010 "on or about January 26, 2011." The remaining counts charged Giambalvo with willfully making and subscribing the same allegedly false tax returns, which the indictment alleged were "filed with the [IRS]." The district court instructed the jury, with respect to Count 1, that it was required to find that

> [o]n or about January 26, 2011, the defendant acted with the purpose to obstruct or impede due administration of the internal revenue laws by filing with the [IRS] at least one U.S. Individual Income Tax Return, Form 1040, for the calendar year 2003 through 2010 which was false or fraudulent as to the amount of wages, salaries, tips, etc. claimed.

As to the remaining counts, the court instructed the jury that it was required to find that "on or about January 26, 2011, the defendant made and signed an individual income tax return, Form 1040, for the year in question, which was filed with the [IRS], that was false as to the amount of wages the defendant received from The Boeing Company."

Giambalvo argues that although the jury had to find that the documents at issue were "filed" "on or about January 26, 2011," the district court excluded official IRS records, a federal court pleading by the IRS in a civil case, and the testimony of two defense IRS witnesses that the defense offered to show that the documents were not "filed" or were "filed" on different dates.

Giambalvo sought to call Victoria O'Brien as a witness. "O'Brien was initially a witness on the Government's witness list as a custodian of records." Giambalvo "anticipate[d] that Ms. O'Brien would testify . . . that account transcripts are the official certified record for a particular taxpayer for a particular tax year." These "official IRS records, provide dates as to when tax returns were filed or not filed." His

purpose in eliciting the testimony was to challenge the "on or about" element of the indictment; his "theory" was that "the facts are different from what the Government and its witnesses have presented to the jury in their case in chief, and we believe that we should be entitled to present official IRS certified records certified as true and accurate as to this taxpayer for these tax years." Giambalvo's counsel explained to the court that some of the tax returns did not say when they were filed, while some of them said May 2011 and November 2011.

In response, the government argued that it was irrelevant whether "the IRS's internal coding system . . . may indicate for different purposes that they were filed subsequently" and asserted that it was "undisputed that the returns were submitted, filed[,] . . . [or] delivered to the revenue officer on January 26, 2011."

The court refused to permit O'Brien to testify after concluding that the testimony would likely be more prejudicial than probative because it was undisputed that Giambalvo submitted the documents to the IRS on January 26. The court found that Giambalvo's counsel had already "admitted that [Giambalvo] submitted these records on January 26." The court was unpersuaded that different dates which might have significance within the IRS's internal operations would prove anything meaningful to the central inquiry of Giambalvo's own conduct.

Giambalvo also sought to introduce "evidence . . . that the Internal Revenue Service in an official capacity filed with the United States Bankruptcy Court for the Eastern District of Missouri in a case involving Mr. Giambalvo a couple months ago, in 2014, filed a proof of claim." According to Giambalvo's counsel, "[t]he document expressly says that Mr. Giambalvo's 2009 tax return was, quote, not filed, end quote." Counsel asserted that the IRS's position in the bankruptcy was "completely inconsistent with the Government's evidence that the Court has permitted the Government to produce."

The district court observed that Giambalvo failed to object to the government's introduction of the 2009 Form 1040 that Giambalvo filed and that Giambalvo sent that form to Laramie at the IRS. The court explained that Giambalvo's counsel could not "object to this evidence of this 1040 being filed by [Giambalvo,] but then put in evidence that he never did it." Counsel responded that he did not "categorically agree that Mr. Giambalvo, quote, filed, end quote, this document."

Finally, Giambalvo sought to call IRS employee William Butler, proffering that Butler would testify that he reviewed official IRS databases IDRS and IMFOLT in 2013 and determined that the documents that the IRS alleged were "filed" in this case were not "filed" on or about January 26, 2011, and that the documents were not deemed "tax returns." The court excluded the testimony, explaining:

> *The evidence before the Court is that [Giambalvo] put 1040 and Individual Income Tax Return forms in the mail and addressed them to the Internal Revenue Service*. That's not disputed. So how someone else in the Internal Revenue Service says, well, that's good enough to meet [sic] to be a return, that's not what the law is about, so we're not going to go there. It's just not an issue here given what your client did and what you've told the Court, as an officer of the court, he did. And didn't object to it in this case.
>
> * * *
>
> You want to change the plain English language, okay, and I'm not going to do it. *And you've already told me, as an officer of the court, that, in fact, your client mailed these Form 1040s to the Internal Revenue Service*. So that's where we are.

(Emphases added.)

We hold that the district court did not abuse its discretion in excluding the aforementioned evidence. *See United States v. Kramer*, 768 F.3d 766, 771 (8th Cir.

2014) (standard of review). Giambalvo testified that he mailed Officer Laramie a package containing his tax returns for the years 2000 through 2010 on January 25, 2011, the date that the envelope used to send the returns to the IRS was postmarked. His counsel also, at a bench conference outside of the jury's presence, conceded that Giambalvo mailed the documents to the revenue officer. He nevertheless contended that "mailing" is "different from filing." "File" or "filing" means, among other things, "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record" or "[t]o record or deposit something in an organized retention system or container for preservation and future reference." Black's Law Dictionary (9th ed. 2009); *see also* Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/file (last visited Sept. 1, 2015) ("filing" means, among other things, "to submit documents necessary to initiate a legal proceeding"). Based on Giambalvo's counsel's concession that Giambalvo "mailed" the Form 1040 to the IRS on January 25, 2011, counsel was also necessarily conceding that Giambalvo "submitted," "deposited," or "delivered" the document to the IRS, which satisfies the definition of "file" or "filing." Therefore, as the district court found, how the IRS treated the form after January 26, 2011, is not relevant to Giambalvo's conduct on or about that date, especially considering Giambalvo's concession that he did, in fact, mail the form on that date.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____