# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3026

_____

United States of America

*Plaintiff - Appellee*

v.

Chet Lee West

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: April 14, 2016
Filed: July 22, 2016 (Corrected July 22, 2016)

_____

Before LOKEN, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Chet Lee West was convicted by a jury on three counts of tax evasion in violation of 26 U.S.C. § 7201 and sentenced to fifty-one months' imprisonment and three years' supervised release. He appeals the district court's exclusion of certain evidence and its imposition of two special conditions of supervised release. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

Computer Specialist Inc. (CSI) hired West as a computer technician in June 2006. West submitted a Form W-4 to CSI claiming he was exempt from any federal income tax withholdings. He also represented in writing to CSI that he was exempt from all income tax and withholding and he instructed CSI not to submit reports concerning his wages to the Internal Revenue Service (IRS). As a consequence, CSI did not withhold federal income tax from West's earnings. West deposited his income from CSI into bank accounts opened in the name of companies he had formed in an effort to conceal his income from the IRS. In June 2009 the IRS notified CSI it would be levying West's wages. Learning that CSI intended to comply with the levy, West resigned his position and began subcontracting for CSI through his own company, Positive Flow Systems LLC (PFS). Going forward, CSI made payment to PFS and that income was directed to West without any federal income tax withholding deducted. As a result of these actions and neglecting to file federal income tax returns for 2007, 2008, and 2009, West paid no federal income tax for those years.[1] West set out his beliefs that his earnings from CSI are not taxable income and that he is not a taxpayer in several pieces of correspondence with the IRS and with CSI.

West proselytized his beliefs in an e-book self-published and sold through Amazon.com, entitled <u>Are You a Taxpayer? Really? Prove It!</u>. In addition, the presentence investigation report (PSIR) identified West as "the owner/manager of several websites and/or online blogs which promote his fraudulent tax scheme and contain non-taxpayer propaganda, among other information." The first website the PSIR identifies is a blog West maintains detailing his travails in the instant litigation. The second is a website that West appears to neither own nor maintain; rather, the website is dedicated to beliefs shared by West, and one of its many pages summarizes

---

[1]West has not filed a legitimate return or paid federal income tax since 2000.

"The Remarkable Redemption of Chet and Valerie West's 2001 1040."[2] The third website identified in the PSIR is no longer available, but according to the PSIR West worked for the website as a "nontaxpayer advocate." In addition, West assisted an acquaintance, Teresita Reed, in avoiding paying federal income tax. He organized a company, Southern Sweets LC, with PFS as its registered agent. With West's assistance, Reed arranged for her employer to contract with PFS, with the income directed by PFS–sans federal income tax withholding and less a fee–to Southern Sweets, who employed Reed. West also used PFS to employ his son, Brandt West, and pay him without withholding taxes or reporting the income to the IRS.

West was indicted on three charges of tax evasion for failing to pay federal income tax in 2007, 2008, and 2009. Before trial, the district court granted the government's motion in limine, prohibiting West from offering argument that purported to instruct the jury on the law. Specifically, West was prohibited from offering evidence that federal tax laws are unconstitutional, that West is not subject to them, and that wages are not income subject to taxation under the Internal Revenue Code (IRC). West represented himself at trial, and his defense appears to have been that he did not earn taxable income from 2007 to 2009. At times, he stated this defense in terms of an absence of willfulness. In his opening statement he told the jury, "I didn't think I was doing anything wrong." In his closing argument he stated, "No knowledge of the legal duty equates to the impossibility of making a willful intent." And one of West's proposed, unadopted jury instructions stated: "The defendant's attitude toward the Internal Revenue Service or the reporting and payment of taxes generally may be considered by you in determining his willfulness with respect to each of the allegations contained in the indictment."

---

[2]This apparently references West's 2001 Form 1040, which he signed with the words "under duress" written above and below the signature. The IRS rejected it.

West presented his defense almost entirely through cross-examination of the government's witnesses. One of these was IRS agent Richard Troester, a so-called "summary" witness, who discussed application of the tax code generally to the particular facts of West's case. See United States v. Ellefsen, 655 F.3d 769, 780 (8th Cir. 2011) (describing role of summary witness in tax evasion case). West cross-examined Troester and attempted to impeach his knowledge of the IRC and contradict his testimony by referencing the IRC's definition of "United States" and "employee." The district court sustained the government's objection to each of these lines of questioning and did not permit West to recite the IRC's definitions of "United States." During his case-in-chief, West called his son Brandt, who had assisted West in writing his e-book. When West attempted to enter the e-book into evidence, the district court sustained the government's objection on relevance.

The jury found West guilty on all counts and the district court sentenced him to fifty-one months' imprisonment and three years' supervised release. At the request of the IRS the district court imposed, among others, the following two special conditions of supervised release:

13. The defendant shall not engage in the creation of or establish any new websites, and he is required to remove any websites, past or present, which are currently active.

14. The defendant is prohibited from using or possessing any computer(s) (including any handheld computing device, any electronic device capable of connecting to any online service, or any data storage media) without the prior written approval of the U.S. Probation Officer. This includes, but is not limited to, computers at public libraries, Internet cafes, or the defendant's place of employment or education. Furthermore, he shall consent to the search of his computer for content related to criminal activity, at the request of his probation officer.

-4-

West objected to these special conditions.

West appeals his conviction and sentencing, arguing that the district court's evidentiary rulings deprived him of his right to present a complete defense and that the above-quoted special conditions of supervised release were an abuse of discretion and violated his First Amendment rights.

## II.    DISCUSSION

### A.    Evidentiary Rulings

West first argues that the district court's evidentiary rulings deprived him of his constitutionally protected right to present a complete defense. We review evidentiary rulings for an abuse of discretion, but our review is de novo when the challenge implicates a constitutional right. United States v. White, 557 F.3d 855, 857 (8th Cir. 2009). Even where an evidentiary ruling is an abuse of discretion or violates a constitutional proscription, however, we will not reverse unless the error is more than harmless in that it affected a substantial right or had more than a slight influence on the verdict. Id. at 857-58. We have recognized the right of a criminal defendant to present a complete defense, grounded in either the Sixth or Fourteenth Amendments, with the caveat that it may be limited by other legitimate interests of criminal trials, such as excluding incompetent, irrelevant, or privileged testimony. E.g., United States v. Petters, 663 F.3d 375, 381 (8th Cir. 2011). "To that end, the 'Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'" Id. (alterations in original) (quoting Crane v. Ky., 476 U.S. 683, 689-90 (1986)).

Title 26 U.S.C. § 7201 provides: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall . . . be guilty of a felony . . . ." The requirement that such an attempt be "willful" "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." Cheek v. United States, 498 U.S. 192, 201 (1991). West contends that by preventing him from reading provisions of the tax code to agent Troester during cross-examination and by excluding his e-book, the district court prevented him from presenting as a defense his mistaken beliefs that he did not earn taxable income and is not a taxpayer.

Cheek squarely addressed the mistaken-belief defense to a charged violation of § 7201, holding that a defendant could defeat the willfulness element by proving to the jury that he had a subjective, good-faith belief that the relevant provision of the tax laws did not impose tax liability on him. "[O]ne cannot be aware that the law imposes a duty upon him and yet be ignorant of it, misunderstand the law, or believe that the duty does not exist." Id. at 202. Relevant here, the Court in Cheek observed:

> Of course, in deciding whether to credit Cheek's good-faith belief claim, the jury would be free to consider any admissible evidence from any source showing that Cheek was aware of his duty to file a return and to treat wages as income, including evidence showing his awareness of the relevant provisions of the Code or regulations . . . .

Id. The Court also noted that "forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision." Id. at 203. The Court recognized, however, that a mistaken-belief defense does not encompass situations where the defendant, rather than having a genuine misunderstanding of the law, knows the law but merely disagrees with it. Id. at 202 n.8. Further, the Court distinguished the mistaken-belief defense from an

-6-

argument that a relevant provision is invalid, which argument would "reveal full knowledge of the provisions at issue." Id. at 205.

We recently addressed an argument similar to West's in United States v. Giambalvo, 810 F.3d 1086 (8th Cir. 2016). There, Giambalvo was charged with filing false tax returns claiming zero taxable income, and he argued that he had a mistaken belief that he did not earn taxable income. Id. at 1090-91, 1093. Giambalvo wished to present testimony by an IRS employee that after the publication of a particular book upon which Giambalvo had relied in forming his belief that he did not earn taxable income, the agent had received zero-income returns similar to Giambalvo's. Id. at 1093. We noted that

> a court "ordinarily cannot exclude evidence *relevant* to the jury's determination of what a defendant *thought the law was* in § 720[6][3] cases because willfulness is an element of the offense." Therefore, "statutes or case law upon which the defendant claims to have *actually relied* are admissible to disprove that element if the defendant lays a proper foundation which demonstrates such reliance."

Id. at 1095 (first alteration in original) (citation omitted) (quoting United States v. Powell, 955 F.2d 1206, 1214 (9th Cir. 1992)). We concluded that the IRS agent's testimony would not be relevant to establishing Giambalvo's subjective reliance on the book and affirmed the district court's exclusion of that testimony. Id.

Cheek and Giambalvo compel the conclusion that West was entitled to present provisions of the IRC and other material to the jury for the purpose of supporting a mistaken-belief defense, but only after he laid foundation that he relied upon those

---

[3]Both § 7201 and § 7206 contain a willfulness element.

provisions in forming his beliefs.[4] It is not entirely clear whether West objects to the district court's order granting the government's motion in limine, but we think that the order was appropriate. It adheres to Cheek's distinction between a defense based on the applicability of a tax law and one based on its validity. The order prohibited argument on the constitutionality of tax laws, not on West's mistaken belief as to their applicability. It also prohibited argument that West is not subject to United States law and that his earnings from CSI were not taxable income. This, too, was permissible. Although West may argue that his misunderstanding of the law was, subjectively, formed in good faith, this is in contradistinction to an argument that the law does not, in actuality, apply to West, an argument that risks confusing the jury and which invades the district court's responsibility to instruct the jury on the law.

West specifically objects to the district court's ruling that he could not read IRC provisions to Agent Troester during cross-examination and the district court's exclusion of West's book from evidence.[5] The problem with West's objection to the former ruling is that he did not attempt to present those provisions for the purpose of presenting a mistaken-belief defense. The transcript reveals that West intended to contradict Troester's testimony that the IRC applied to West and, perhaps, to impeach Troester's credibility by demonstrating his lack of knowledge of the IRC. Permitting West to read the provisions to Troester for those purposes would have risked juror confusion and would not have furthered West's right to present a mistaken-belief

---

[4]The admissibility of evidence for this purpose is also illustrated in United Stated v. Gustafson, 528 F.3d 587, 591-92 (8th Cir. 2008), and United States v. Willis, 277 F.3d 1026, 1033 (8th Cir. 2002).

[5]The government argues that West failed to make offers of proof and so failed to preserve his objections, warranting plain-error review. Fed. R. Evid. 103(a)(2). Even were we to decline to give West, a pro se defendant, the benefit of the doubt as to whether the "substance [of the excluded evidence] was apparent from the context," id., this argument is of no consequence as it does not alter our conclusion.

defense. West's e-book, although it may have presented West's beliefs, could not logically comprise material upon which West relied in forming the very opinions it sets forth and so was not relevant to a mistaken-belief defense. Further, his questioning was directed at the "reliability of the thesis of the book," indicating his purpose was to show that he was not, in fact, a taxpayer. Because the right to present a complete defense does not entitle a defendant to present the jury with evidence that is either irrelevant or is properly excluded under Federal Rule of Evidence 403, we affirm the district court's evidentiary rulings.

## B.     Special Conditions of Supervised Release

West also objects to two of the district court's special conditions of supervised release. We generally defer to a district court's broad discretion to impose special conditions if they comport with the strictures of 18 U.S.C. § 3583(d) that the condition is: (1) reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, adequate deterrence, public protection, and the needs of the defendant; (2) involves no greater deprivation of liberty than reasonably necessary for the sentencing purposes of adequate deterrence, public protection, and the needs of the defendant; and (3) is consistent with applicable policy statements by the United States Sentencing Commission. Further, special conditions of supervised release must be supported by particularized findings specific to the defendant, rather than be categorically applied to all those found guilty of committing that offense. United States v. Davis, 452 F.3d 991, 995 (8th Cir. 2006). We review special conditions for an abuse of discretion; however, "[w]here a condition of supervised release would impose 'sweeping restrictions on important constitutional rights,' we review the condition more closely." Id. (quoting United States v. Crume, 422 F.3d 728, 733 (8th Cir. 2005)). We address each condition in turn.

### 1.      Special Condition #13

Special Condition #13 requires that West refrain from creating or establishing any new websites and that he remove any of his currently existing websites.  West argues that this condition deprives him of a greater amount of liberty than that necessary for the purposes identified in § 3583(d).  While he grants that "[i]f Condition #13 prohibited only websites related to income tax, such a condition might be permissible," he points out that the condition "prohibits West from creating or maintaining *any website*, no matter the topic."  Further, West challenges Special Condition #13 as overly restrictive of his First Amendment rights.  The government responds that the condition is not overbroad because it meets § 3583(d)'s requirements.  Further, the government argues that West's promotion of methods of avoiding taxes on the Internet is commercial speech, and thus his "use of websites and his eBook to promote his fraudulent tax scheme is not protected by the First Amendment."

"A special condition of supervised release is only unconstitutionally overbroad if its overbreadth is real and substantial in relationship to its plainly legitimate sweep."  United States v. Thompson, 653 F.3d 688, 695 (8th Cir. 2011).  We have addressed the issue of special conditions infringing on First Amendment rights largely in the context of criminal sex offenses, upholding restrictions on defendants' access to pornographic materials, e.g. United States v. Deatherage, 682 F.3d 755, 764 (8th Cir. 2012); Thompson, 653 F.3d at 695; United States v. Boston, 494 F.3d 660, 667-68 (8th Cir. 2007), but rejecting as overbroad restrictions on accessing materials that contain "nudity," that "allude" to sexual activity, or that present "sexually arousing" content, e.g., United States v. Kelly, 625 F.3d 516, 520-22 (8th Cir. 2010); United States v. Simons, 614 F.3d 475, 483 (8th Cir. 2010) (plain-error review).  In another vein of challenged special conditions, we have upheld bans on Internet access (but allowing for access after receiving permission from a probation officer) where

a defendant used the Internet to produce or distribute child pornography or to arrange an illicit sexual encounter, e.g., United States v. Bender, 566 F.3d 748, 751-52 (8th Cir. 2009); Boston, 494 F.3d at 668; United States v. Ristine, 335 F.3d 692, 695-96 (8th Cir. 2003) (plain-error review); United States v. Fields, 324 F.3d 1025, 1027-28 (8th Cir. 2003) (plain-error review), but not where the defendant only used the Internet to access and possess limited amounts of child pornography, e.g., United States v. Wiedower, 634 F.3d 490, 494-96 (8th Cir. 2011); United States v. Mark, 425 F.3d 505, 509-10 (8th Cir. 2005) (noting that an Internet ban in such circumstances may be appropriate where defendant is "incorrigible" and where district court has thoroughly considered and rejected as ineffective alternative restrictions); Crume, 422 F.3d at 733 ("We are not convinced that a broad ban from such an important medium of communication, commerce, and information-gathering is necessary given the absence of evidence demonstrating more serious abuses of computers or the Internet."). But see United States v. Morais, 670 F.3d 889, 896-97 (8th Cir. 2012) (upholding Internet ban for possession of child pornography where its quantity and content were "egregious"); Deatherage, 682 F.3d at 764 (same where Internet access was "central to [defendant's] child pornography offense" and where defendant had violated a similar condition of pretrial release). Particularly relevant, we think, is our opinion in Bender. Bender was convicted of traveling with intent to engage in illicit sexual conduct, and while on supervised release was caught accessing pornographic images on a computer in a public library. 566 F.3d at 750. At the revocation hearing, the district court imposed a special condition of supervised release prohibiting Bender from entering *any* library, public or private. Id. at 750-51. We struck down that condition as overbroad, noting that "[a]lthough Bender improperly used library resources, libraries are essential for research and learning." Id. at 753.

Although none of the foregoing precedent is factually on point, we think the principles our cases elucidate demand greater precision from Special Condition #13. Considering the findings set out in the PSIR that West assisted others in violating the

-11-

tax laws, sold material online promoting his ideas, and maintained and participated in websites relating to tax-evasion schemes, there may be a plainly legitimate sweep of restrictions the district court could have placed on West's ability to promote his ideas through the Internet. But the district court's special condition prohibits West from creating and maintaining any website irrespective of its content. Even granting the government's questionable position that West was only engaged in commercial speech, Special Condition #13 would apply to noncommercial speech as well. Perhaps such a restriction could be upheld if the conduct at issue was especially egregious, as in Morais, or if it was central to West's offense, as in Deatherage. Cf. United States v. Keller, 366 F. App'x 362 (3d Cir. 2010) (upholding special condition on conviction for mail fraud banning creation or maintenance of "business" websites where defendant's crime involved shipment of products sold through several of his Internet retail websites). But this case is more analogous to Bender and Crume. Although West misused his access to the Internet, websites present an important mode of communicative and commercial intercourse in our society through which West can exercise his right to speak. Because "[t]his court is 'particularly reluctant to uphold sweeping restrictions on important constitutional rights,' . . . such [absolute] bans are disfavored." Bender, 566 F.3d at 753 (quoting Crume, 422 F.3d at 733). We agree with West that Special Condition #13 deprives him of a greater amount of liberty than necessary to achieve the sentencing purposes identified in § 3583(d). Given (1) the limitless amount of topics and purposes for which a website might be created or maintained and the comparatively narrow ambit of subject matter West may be prohibited from publishing, (2) the limited extent to which West created or maintained websites in order to promote tax avoidance, and (3) the attenuated relationship between the websites referenced in the PSIR and the offense for which West was convicted, we hold that Special Condition #13 is overly broad.

## 2.    Special Condition #14

West also challenges Special Condition #14, which bans him from using or possessing computing devices without prior written approval from a probation officer and requires him to consent to searches of any computer he is permitted to possess. West again argues this condition deprives him of a greater amount of liberty than necessary, pointing out that he earns his living working with computers. West also asserts that the district "court's conclusion that West's computer use incited criminal activity lacks the individualized factual support required to uphold a special condition of supervised release." The government argues that this restriction is necessary to monitor West and restrict his ability to use computers to commit and encourage others to commit criminal activity.

Again, our relevant precedent in this area comes from cases involving convictions for criminal sex offenses. In this context, we have generally upheld computer restrictions where a defendant used computers to distribute or produce child pornography, United States v. Goettsch, 812 F.3d 1169, 1171 (8th Cir. 2016), stored child pornography in a readily transferable medium, United States v. Muhlenbruch, 682 F.3d 1096, 1105 (8th Cir. 2012), and generally did more than "merely possess child pornography," Boston, 494 F.3d at 668. Further, we have vacated such restrictions if there is "nothing in the record to suggest that the district court conducted an individualized inquiry into the appropriateness of the computer . . . restriction[]." Wiedower, 634 F.3d at 495.

Neither the PSIR nor the sentencing hearing transcript contain any individualized findings that West used a computer to promote tax evasion schemes. This likely can be inferred from his Internet activity. The use of a computer could also arguably be inferred from West's two-level enhancement for sophisticated means in the creation of multiple accounts for different businesses and complex transactions

-13-

made between them in an effort to conceal income. But if these activities comprise the full extent of findings justifying the ban on computers, then clearly the restriction is broader than necessary, as computers may be used in myriad ways not related to promoting tax evasion online or concealing funds. We are convinced the district court could have crafted a narrower restriction that would have adequately achieved the sentencing purposes of deterrence and public protection without hindering West in continuing his career as a computer technician. One of the sentencing purposes identified in § 3583(d) is the need of the defendant to be provided vocational training, demonstrating a determination that special conditions not needlessly interfere with the defendant's ability to reintegrate into society. We hold that the ban on computer restrictions appears to deprive West of a greater amount of liberty than necessary to achieve § 3583(d)'s sentencing purposes.

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's evidentiary rulings but vacate the challenged special conditions of supervised release and remand for resentencing consistent with this opinion.

———————————————