# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3562

_____

United States of America

*Plaintiff - Appellee*

v.

Lynn Alisa Espejo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Western Division

_____

Submitted: September 28, 2018
Filed: January 4, 2019

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Lynn Alisa Espejo appeals her conviction for various crimes related to stealing funds from a medical practice while working as its bookkeeper, arguing that the district court erred by excluding potentially exculpatory evidence regarding the

medical practice's destruction of financial records. We conclude that the district court[1] did not abuse its discretion in excluding the evidence.

## I. Background

Espejo was the administrator for Practice Management Services Inc. ("PMSI"), a medical practice. As the administrator, Espejo was effectively responsible for managing the office. When PMSI changed presidents from Dr. Bruce Sanderson to Dr. Scott Brown in 2010, Brown discovered a debit card linked to PMSI's account which, along with several other issues, caused him to further investigate PMSI's finances. PMSI placed Espejo on administrative leave, and she subsequently resigned on October 1, 2010. The investigation ultimately revealed that Espejo had transferred some of PMSI's funds into her personal account.

Many of PMSI's financial records that were part of the investigation into Espejo's use of funds are now missing. During the investigation into the funds in 2010, Espejo's attorney asked PMSI's counsel to retain all financial documents for the case. In February 2011, after You Shred-It visited PMSI for its periodic shredding of records, a PMSI employee discovered that all of the documents in storage were gone, including the Espejo documents stored in a locked cabinet. PMSI also failed to preserve Espejo's computer. Fortunately, off-site bank and credit card records reproduced the relevant transactions, and every testifying doctor besides Sanderson reproduced their settlement statements from PMSI for the relevant years. Sanderson reproduced only his 2010 settlement statements.

In 2014, a grand jury indicted Espejo on fifteen counts of wire fraud, seven counts of money laundering, and four counts of filing false tax returns. Espejo moved

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

to dismiss the indictment for, among other reasons, intentional destruction of evidence. The district court denied the motion to dismiss the indictment but, on the Government's motion, dismissed one of the counts of money laundering.

In pretrial motions, the Government moved to exclude evidence and argument related to PMSI's destruction of financial documents. At trial, the district court excluded evidence related to the destruction of the records under Fed. R. Evid. 401, 402, and 403. The district court explained that it did not understand why the missing documents would be needed for a defense given the availability of credit card statements to show what Espejo purchased with the funds at issue. It also explained that there was no evidence the Government destroyed the documents. It further prohibited defense counsel from asking Sanderson about intentional destruction of his settlement statements, pending review of further evidence in the case.

Espejo wanted the missing records to support her defense that Sanderson routed personal funds through PMSI's account in order to hide money from his wife. She conceded that she transferred $611,099.04 from PMSI and a related entity to her personal bank account and that she maintained separate Quickbooks files to hide the transactions. She testified that Sanderson authorized these practices, asking her to purchase items for him and reimburse herself from PMSI's account, and occasionally allowing her to purchase gifts for her children with funds reimbursed from PMSI's account. She also conceded that she made a few personal purchases using the PMSI debit card, but she stated that those purchases involved mistaken use of the wrong card and that she reimbursed any such mistakes.

Sanderson admitted he had routed personal transactions through PMSI's account, using checks directly from the account for purchases. He denied ever authorizing Espejo to use her personal account for purchases on his behalf.

Some of the evidence indicated that Espejo transferred more funds to her account than Sanderson deposited in PMSI's account. Sanderson's 2010 statements showed that he deposited $4,612.07 beyond what he owed PMSI between January 1 and September 9, 2010. Espejo took $210,425.41 in funds from PMSI's account during the same time period. Her defense was that Sanderson had deposited extra funds in the account that had continually built up over time.

Despite the missing records, the evidence at trial indicated that PMSI's account contained some extra funds with an unknown source. At the end of 2009, the account balance was $99,259.27. There were six doctors in the practice at that time, each of whom contributed about $5,000-6,000 when they joined. Sanderson also testified that a previous member of the practice, Dr. Columbus Brown, was in arrears by "a big amount" to PMSI, indicating that the doctors' collective contributions alone could not account for the surplus in the account. The Government introduced evidence of other sources of income: a $14,000 check from Memphis Pathology Lab that was not credited to any doctor, and a $41,062.48 refund from McKesson Specialty Care Distribution that was not credited to any doctor. There was additional testimony about Espejo possibly depositing the doctors' tax refunds into PMSI's account without crediting them.

After hearing most of this evidence, the district court excluded *all* evidence regarding intentional destruction of the settlement statements, including questions on the topic directed to Sanderson. The district court explained that it had heard no evidence of what particular documents were destroyed and no evidence of any particular person destroying documents. It observed that the destruction also occurred several months after Espejo resigned from PMSI, which suggested that the destruction was not an intentional act. It also explained that it did not want to allow speculation on the issue without more particular evidence. After reviewing the relevant testimony from the motion to dismiss hearings, the district court concluded the evidence of destruction was too speculative because the key witness could only

testify that documents went missing over a weekend, without confirming what documents they were or even confirming that it was the shredding company that took them.

At the end of the trial, the jury convicted Espejo on all counts at issue. The district court sentenced Espejo, and she timely appealed.

## II. Standard of Review

"We review evidentiary rulings for an abuse of discretion, but our review is de novo when the challenge implicates a constitutional right." *United States v. West*, 829 F.3d 1013, 1017 (8th Cir. 2016). "Even where an evidentiary ruling is an abuse of discretion or violates a constitutional proscription, however, we will not reverse unless the error is more than harmless in that it affected a substantial right or had more than a slight influence on the verdict." *Id.*

## III. Analysis

The district court did not err in excluding evidence regarding the destroyed medical records. "We have recognized the right of a criminal defendant to present a complete defense, grounded in either the Sixth or Fourteenth Amendments, with the caveat that it may be limited by other legitimate interests of criminal trials, such as excluding incompetent, irrelevant, or privileged testimony." *Id.* The right is also limited by Fed. R. Evid. 403. *See id.* at 1019.

The limited probative value of the missing documents is apparent because Espejo would have to prove the existence of deposits that were not in the available bank account records in order to show probative value. Sanderson's deposits only appear to exceed his bills by a few thousand dollars, and Espejo took $611,099.04 in reimbursements. The only evidence in the record of other sources of funds is the

Government's evidence that Espejo was depositing vendor refunds and tax refunds without crediting them to the doctors.

Even if the missing documents were relevant, the limited probative value of the *destruction* of those documents is also apparent because Espejo did not offer a clear motive for anyone at PMSI to destroy those documents. Espejo had no evidence establishing Sanderson's motive beyond her own testimony, and Sanderson openly admitted to using the account directly for personal purchases. There is also no evidence that any other doctor would have wanted those records destroyed. In fact, it appears that the new president of PMSI would have an interest in maintaining the records and investigating Sanderson's practices of routing personal purchases through PMSI. In the absence of any significant evidence linking an individual to the destruction of the records, the district court did not abuse its discretion in disallowing any evidence on the issue.

## IV. Conclusion

The district court did not abuse its discretion in excluding evidence regarding the destruction of documents. We affirm.

_____