# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1789
_____

United States of America

*Plaintiff - Appellee*

v.

Larry Lee Henderson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 13, 2020
Filed: April 29, 2020
[Unpublished]
_____

Before BENTON, BEAM, and KOBES, Circuit Judges.
_____

PER CURIAM.

Larry Lee Henderson pleaded guilty in 2014 to one count of wire fraud and began his first term of supervised release on March 3, 2017. In the current appeal, he challenges the terms and conditions of his supervised release, imposed following

the revocation of his second term of supervised release. For the reasons stated herein, we affirm the district court.[1]

In 2014 Henderson pleaded guilty to one count of wire fraud in a two-count indictment resulting from his use of fraudulent documents to obtain money and property. As part of the scheme, as described in the plea agreement and as relevant here, Henderson fraudulently purchased a vehicle, used a fraudulent notice of lien release, obtained a loan based on the use of fraudulent documents and information, and wrote counterfeit checks, among other acts, in part using his affiliation with the Holy Temple National Assembly Church (Holy Temple) to do so. Henderson is an ordained minister of Holy Temple located in St. Louis, Missouri. He states that he is a bishop and board member of that church as well and presently maintains both positions while incarcerated.

The district court has imposed terms of supervised release for Henderson three times–at his initial sentencing and at each of his two revocation hearings–and each time has included the particular terms now challenged by Henderson. During his initial sentencing, there was discussion with the district court about concerns that Henderson held himself out to the public as the bishop of Holy Temple with the intention to cloak himself in the mantle of the church so that he could defraud the public for his own gain. The terms and conditions at issue stemmed from these initial discussions with the court. Particularly one condition states that Henderson may:

> not be employed as a board member or a consultant or a volunteer or aid or assistant or in any other capacity associated with the church that has been the subject of discussion here that would allow him in any way, shape, manner, or form access to or involvement in any type of financial activity.

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

-2-

Additionally, Henderson may "not create, operate, manage or participate in the creation, operation or management of any business entity, including a family business without the written permission of the probation office."

In 2017, Henderson appealed following his first revocation, challenging the occupational restrictions at issue today. Under plain error review, this court held that because Henderson "intertwined his church activities with his fraudulent dealings," barring him from participating in any organizational financial activities during his supervised release was reasonably related to the 18 U.S.C. § 3583(d) sentencing factors. United States v. Henderson, 902 F.3d 822, 830 (8th Cir. 2018). Henderson again maintains in the instant appeal that these terms of release are not reasonably related to the relevant sentencing factors and involve a greater deprivation of liberty than necessary.

District courts enjoy broad discretion to impose conditions of supervised release. United States v. Moore, 860 F.3d 1076, 1078 (8th Cir. 2017). This court reviews the imposition of special terms and conditions of supervised release for an abuse of discretion. United States v. Hobbs, 845 F.3d 365, 367 (8th Cir. 2016). Pursuant to 18 U.S.C. § 3583(d), conditions of supervised release must (1) be reasonably related to certain sentencing factors set forth in 18 U.S.C. § 3553(a); (2) must involve no greater deprivation of liberty than is reasonably necessary to deter criminal conduct, to protect the public from further crimes of the defendant, and to provide for the defendant's educational, vocational, medical, and other correctional needs; and (3) the condition must be consistent with any pertinent policy statements issued by the Sentencing Commission.

Henderson does not claim there is no reasonably direct relationship between his occupation and the offense of conviction, nor does he claim the imposition of the restrictions is not reasonably necessary to protect the public. Rather, Henderson argues that these occupational restrictions "act as a complete and total ban on his

occupation as a bishop and board member of his church"–that they have not been imposed to the minimum extent necessary. We disagree. The conditions at issue are not the sort of broad sweeping, or absolute, restrictions this court has found overbroad. See United States v. West, 829 F.3d 1013, 1021 (8th Cir. 2016) (finding that special conditions restricting defendant from establishing any websites or using or possessing any computers amounted to sweeping restrictions and absolute bans). Importantly, Henderson is not outright restricted from any employment, he is only restricted from employment or activities that deal with the financial aspects of his church. He may also pursue business or employment opportunities with the written permission of his probation officer, a reasonable condition given the nature of the offense conviction and Henderson's repeated violations while on supervised release.

Henderson and the district court discussed this at length during the instant revocation hearing where the district court painstakingly made clear that the condition limiting Henderson's financial involvement in the church in no way inhibits Henderson's right to practice his religion, but rather restricts Henderson from being involved with money. The district court stated with clarity, "You can minister to the congregation by preaching to them and talking to them," but "if [anything] involves money, you can't do it." As to the creation, operation, management of any business entity, or other restrictions on Henderson's employment, the only restriction is that Henderson may not pursue such endeavors "without the written permission of the probation office." Accordingly, there is no "total ban" and the district court did not abuse its discretion in imposing these conditions of supervised release. We affirm.

_____